85 N.Y.2d 131 (1995)
647 N.E.2d 1275
623 N.Y.S.2d 767
The People of the State of New York, Respondent,
v.
Glen Van Norstrand, Appellant.
Court of Appeals of the State of New York.
Argued January 10, 1995
Decided February 16, 1995.
Ronald C. Valentine, Public Defender of Wayne County (Peter J. Pullano, Rochester, of counsel), for appellant.
Richard M. Healey, District Attorney of Wayne County, Lyons (Valerie Friedlander, Albany, of counsel), for respondent.
Judges SIMONS, TITONE, SMITH and LEVINE concur with Judge CIPARICK; Chief Judge KAYE dissents in a separate opinion in which Judge BELLACOSA concurs.
*132 CIPARICK, J.
The issue presented on this appeal is whether the trial court committed reversible error by denying defendant's request to *133 charge third degree assault as a lesser included offense of first degree assault.
On the night of March 20, 1991, defendant called for emergency assistance on behalf of his four-month-old son. When the emergency medical technician arrived, defendant advised him that the infant fell off a bed and hit his head on a safe. The technician observed that the child was unresponsive and bruised, and transported him to the emergency room of the local hospital. Following an examination during which the child experienced two or three episodes of decreased respiration, the doctor diagnosed an intracerebral subarachnoid hemorrhage. The doctor directed that the child be transported to Strong Memorial Hospital in Rochester for specialized treatment of the intracranial injury.
The following day, the infant, who was in a coma and had already experienced up to 15 seizures, was admitted to the Children's Critical Care Center at Strong Memorial Hospital. Dr. Brahm Goldstein, the Associate Director of the Center, conducted an examination subsequent to the infant's admission, and determined that he was in a life-threatening situation. The infant's level of consciousness was so depressed that he required artificial ventilation to breathe, and a CT scan revealed substantial swelling of the brain, as well as hemorrhages in two areas of the brain. Based on these findings, Dr. Goldstein concluded that the infant's injuries were totally inconsistent with the accident as described by his father, and were the result of "Shaken Baby Syndrome[[*]]."
The same day the infant was admitted to Strong Memorial Hospital, defendant was brought to the police station for questioning. After he was advised of his rights, defendant reiterated his account of what happened, which mirrored the reports he gave to the police the night before. The police officers, who had discussed the infant's injuries with Dr. Goldstein, then told defendant that they did not believe him. The officers continued to question defendant about the incident over the next two hours, the substance of which was reduced to a written statement, signed by defendant.
In the statement, defendant explained that he had been caring for three children, his four-month-old son, and his girlfriend's two young children, over the previous four days *134 while his girlfriend was hospitalized for a gall bladder operation. Defendant stated that he was under "a lot of stress" and had not gotten much sleep. On the night of the incident, he brought the children to the hospital to visit his girlfriend, and returned home at about 9:30 P.M. His girlfriend's two children, who were 4 and 5 years old respectively, immediately went to bed, and he changed his son and placed him on his bed, hoping he would fall asleep without a bottle. Defendant stated he brought the infant to the couch and gave him a bottle, but the infant continued "fussing" and would not fall asleep. According to defendant, he was tired and lost his temper at this time. Holding the infant underneath his arms, defendant shook him back and forth "pretty hard" with both hands and yelled "Why don't you go to sleep[?]" Defendant conceded that the infant's head was not supported by anything and snapped back and forth once. Further, defendant related that he may have hurt the infant's ribs when he was shaking him because he had "naturally strong" hands, and that the bruises on the infant's nipples were caused by his thumbs. When defendant placed the baby on the couch, possibly hitting the baby's jaw on the springs or side of the couch, he noticed that the baby had turned white and appeared limp, prompting him to seek emergency assistance. Defendant acknowledged that the infant did not fall off the bed as he originally told the emergency medical technician and the police.
After defendant signed his statement, he was arrested. Subsequently, defendant was indicted for one count of assault in the first degree (Penal Law § 120.10 [3]), one count of assault in the second degree (Penal Law § 120.05 [8]), one count of reckless endangerment in the first degree (Penal Law § 120.25), and one count of endangering the welfare of a child (Penal Law § 260.10 [1]). Defendant thereafter moved to suppress his March 21, 1991 statement. The trial court ruled that the statement was admissible, and it was admitted as evidence at the trial. At the trial, the jury heard testimony from the emergency medical technician, the police investigators who took defendant's statement, the physician who first examined the infant in the emergency room, the pediatrician who diagnosed the infant with Shaken Baby Syndrome at Strong Memorial Hospital, the infant's regular pediatrician, defendant's girlfriend, and the girlfriend's sister.
At the close of the People's case, defendant moved to dismiss the assault counts and reckless endangerment count for lack of proof, and requested the trial court to charge the *135 jury on third degree assault as a lesser included offense of first degree assault. The trial court denied both branches of defendant's motion. Subsequently, the jury returned a verdict finding defendant guilty of assault in the first degree and endangering the welfare of a child. The trial court sentenced defendant as a persistent felony offender to an indeterminate sentence of 25 years to life in prison.
Defendant appealed, arguing, inter alia, that the trial court erred in refusing to charge the lesser included offense of assault in the third degree. The Appellate Division affirmed, with two Justices dissenting (see, People v Van Norstrand, 198 AD2d 800). One of the dissenting Justices granted leave to appeal to this Court, and we now reverse.
Penal Law § 120.00 (2) identifies a person who "recklessly causes physical injury to another person" as guilty of assault in the third degree. A person commits the greater crime of first degree assault under Penal Law § 120.10 (3) when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death * * * and thereby causes serious physical injury". Under Penal Law § 15.05 (3), "[a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." Therefore, the crime of first degree depraved indifference assault under Penal Law § 120.10 (3) occurs when an actor "is aware of and consciously disregards" "a grave risk of death to another person." The lesser crime of third degree reckless assault occurs under Penal Law § 120.00 (2) when the actor "is aware of and consciously disregards" a risk that "physical injury" will result.
We have established a two-prong analysis to determine whether a defendant is entitled to a lesser included offense charge (see, People v Glover, 57 N.Y.2d 61, 63; People v Butler, 84 N.Y.2d 627; see also, CPL 1.20 [37]; 300.50 [1]). First, defendant must establish that it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct. Secondly, there must be a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater (see, People v Glover, 57 NY2d, at 63, supra; People v Cabassa, 79 N.Y.2d 722, 728, cert denied sub nom. Lind v New York, ___ US ___, 113 S Ct 633; CPL 1.20 [37]; 300.50 [1]).
*136 Because it is impossible to commit first degree depraved indifference assault without simultaneously committing third degree reckless assault, and all the elements of third degree assault are subsumed in first degree assault, third degree assault is a lesser included offense of first degree assault. Thus, the first prong of the Glover analysis is satisfied (see, People v Glover, 57 NY2d, at 64, supra; see also, CPL 300.50 [2]; People v Butler, 84 N.Y.2d 627, 631, supra).
As to the second prong, we conclude, contrary to the determination of the courts below, that there is a reasonable view of the evidence presented which could support a jury finding that defendant committed the lesser offense of third degree assault but not the greater offense of first degree assault (CPL 300.50 [1]). Our inquiry is not directed at whether persuasive evidence of guilt of the greater crime exists, as it does here, but whether, under any reasonable view of the evidence, it is possible for the trier of facts to acquit defendant on the higher count and still find him guilty of the lesser one (see, People v Henderson, 41 N.Y.2d 233, 236; People v Mussenden, 308 N.Y. 558, 562).
Based on defendant's own account of the incident in question, his fatigue and "stress" caused him to "los[e his] temper" and vigorously shake his infant son. A reasonable fact finder could infer that although defendant acted recklessly  disregarding the known risk that his infant son could be injured by his conduct  he nevertheless lacked an awareness of the grave risk of death inherent in shaking an infant. Thus, the fact finder, viewing the circumstances of this case, could rationally conclude that defendant committed the charged acts but did so with the less culpable awareness that his misconduct created a "substantial and unjustifiable risk" of physical injury and not of death (compare, Penal Law § 120.00 [2], with Penal Law § 120.10 [3]). Therefore, defendant was entitled to a charge-down to third degree reckless assault because a reasonable view of the evidence supported the finding that he acted with awareness of and conscious disregard for a risk of physical injury, not a grave risk of death.
Accordingly, the order of the Appellate Division should be reversed, and a new trial ordered.
Chief Judge KAYE (dissenting).
There is no law question in this case. The only issue before us  as was the only issue before the Appellate Division  is whether the facts required the Trial Judge to charge the lesser included offense of assault *137 in the third degree, a misdemeanor. The Appellate Division majority agreed with the Trial Judge's conclusion that there was no reasonable view of the evidence to support an inference that this defendant was aware of a risk of physical injury but not of a grave risk of death when he admittedly injured his infant son. Two dissenters (one of whom granted leave to appeal to this Court) felt otherwise.
Judge Bellacosa and I conclude that, on this record, the trial court  which had an opportunity to view the witnesses and assess the evidence concerning defendant's state of mind  correctly determined that defendant was not entitled to the misdemeanor charge.[*]
In People v Steinberg (79 N.Y.2d 673) we rejected defendant's contention that a person without a medical education would be unaware that failure to seek medical attention for a child one had severely beaten could lead to that child's death. At this advanced stage of civilization, we should also be able to state with equal confidence that reasonable persons are aware that severe physical abuse of a four-month-old infant creates a grave risk that the infant will die.
Defendant was familiar with the proper care and treatment of young children, acknowledging to a treating physician that he had even had "trouble" stemming from interaction with children in the past. He asserted that he was not so "stupid" as to leave an infant on the edge of a bed because a baby might fall and be injured. He was therefore admittedly aware that he was required to adhere to norms in caring for young children.
Defendant described his hands as "naturally strong," and was aware that he "may have hurt" the baby's ribs and that he had "shook him back and forth pretty hard." He had also seen the child's head "snap back and forth." When he put the infant on the sofa, he did so in a manner that allowed the baby's head to strike a spring or hard surface, bruising his jaw. Violent shaking of a young infant and striking a baby's head against a hard surface are gross deviations from the norm.
At the time of the incident, defendant was also aware that he had "lost [his] temper"  suggesting he was fully aware of *138 the impropriety of his conduct but consciously failed to hold himself in check.
Defendant was likewise aware, immediately after the event, that his conduct had severely injured the baby, who immediately became unresponsive and stopped breathing. Defendant also told the State Police a false exculpatory statement about how the infant had fallen off a bed and wedged his head between the bed and a floor safe, in an effort to account for the child's head injuries, evincing a consciousness of guilt and an awareness of the gravity of the injury he had inflicted.
The medical evidence told a fuller story than defendant's belated admissions, providing objective evidence of the brutal manner in which the infant had been handled prior to his arrival at the hospital, when he was in defendant's exclusive care. The child suffered at least 15 seizures in the hours after arrival at the emergency room. A bruise appeared under the baby's chin. Fresh bruises appeared on the right chest and a two-inch abrasion, with a break in the skin, appeared on the left side of the chest. CAT scans of the child's brain showed that all of the brain tissue in the occipital region had been destroyed, and replaced by fluid. According to the People's expert in pediatric trauma, only "very severe," "very vigorous and violent shaking" could cause such damage. There was far more evidence here than the isolated conclusion of the majority that defendant "lost his temper" and "vigorously" shook his infant son.
According to the Practice Commentaries to article 120 of the Penal Law, illustrative of assault in the third degree is the "`mischievous throwing of a hard object at great speed through the window of an occupied home'" (Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law art 120, at 447, citing Staff Notes of Commn on Rev of Penal Law, Proposed NY Penal Law, McKinney's Spec Pamph, at 332 [1964]). Defendant's wrongdoing in this case was hardly comparable.
Order reversed, etc.
NOTES
[*] Shaken Baby Syndrome is the product of vigorous shaking of an infant, which causes the infant's head to snap back and forth, at least once, often resulting in permanent brain damage.
[*] The jury was also instructed as to assault in the second degree. Defendant did not object to that charge, but the jury chose to convict of the higher count.