■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDDIE GONZALEZ, Appellant. [633 NYS2d 482] —Judgment, Supreme Court, Bronx County (George Covington, J.), rendered July 7, 1993, convicting defendant, after a jury trial, of burglary in the third degree, grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree and sentencing him, as a persistent felony offender, to concurrent terms of 15 years to life for the burglary and larceny convictions and one year for the possession of stolen property conviction, reversed, on the law, the counts of the indictment charging grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree dismissed, and the matter remanded for a new trial on burglary in the third degree with the submission of larceny and trespass in the third degree as lesser included offenses, and on the lesser counts in the indictment charging petit larceny and criminal possession of stolen property in the fifth degree, and a new *Sandoval* hearing directed.

At 10:00 P.M. the night of December 22, 1991 Father Salvas of the Church of the Immaculate Conception heard an alarm go off. Moments later, Father Camillus, who was also the pastor, came to Father Salvas' monastery door and told him that someone was in the church. The two men proceeded down the stairs that connect their monastery to the church. Approximately 30 seconds after the alarm sounded, Father Camillus deactivated it and opened the door to the church.

In the rear chapel, which was used only by the friars and the choir and was off-limits to the public, Father Salvas saw defendant who was walking from the chapel to the sacristy* and was clutching the computer synthesizer that was used with the church's keyboard to create music at the masses.

The police arrived at the church about 3 minutes after the alarm had sounded. In the rear chapel, they found defendant lying under a pew clutching the synthesizer in his arms.

The officers found no signs of forced entry. The poor boxes

---

* Vestments, alter linens and sacred vessels used in the celebration of the mass and for church functions are maintained in a sacristy.

and the offering boxes for votive candles had been emptied before the church was closed and, likewise, showed no signs of recent forced entry. There was no evidence that any of the incense holders, chalices, holy vessels or other precious objects had been tampered with or disturbed.

Father Salvas testified that defendant lacked permission or authority to be in the church at the time he was discovered and similarly did not have permission to take the synthesizer. As vicar and custodian of the church in the rector's absence, Father Salvas testified that the synthesizer had an approximate value of $300 to $500 and that he had seen it the day prior to his testimony in the rear chapel.

The People failed to establish defendant's guilt of grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree because they offered inadequate proof of the value of the stolen synthesizer.

Under the applicable statutes, "A person is guilty of grand larceny in the fourth degree when he steals property and when * * * 9. The property consists of a scroll, religious vestment, vessel or other item of property having a value of at least one hundred dollars kept for or used in connection with religious worship in any building or structure used as a place of religious worship by a religious corporation, as incorporated under the religious corporations law or the education law." (Penal Law § 155.30 [9].)

Similarly, "A person is guilty of criminal possession of stolen property in the fourth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when * * * 6. The property consists of a scroll, religious vestment, vessel or other item of property having a value of at least one hundred dollars kept for or used in connection with religious worship in any building or structure used as a place of religious worship by a religious corporation, as incorporated under the religious corporations law or the education law." (Penal Law § 165.45 [6].)

The Court of Appeals has unequivocally held that "a victim must provide a basis of knowledge for his statement of value before it can be accepted as legally sufficient evidence of such value". (*People v Lopez*, 79 NY2d 402, 404.) A conclusory statement is insufficient to prove current value. *(Supra*, at 404.) Likewise, a "rough estimate" without evidence of its basis is insufficient. (*People v Selassie*, 166 AD2d 358, 359, *lv denied* 77 NY2d 911.) Indeed, even evidence of the original purchase price, without more, will not satisfy the People's burden. (*People v Batista*, 141 AD2d 654, 654-655.)

Here, the prosecutor asked Father Salvas, "[D]o you know the approximate value of that computer portion of the keyboard?" He responded, "Only approximate. Between three and $500".

The People failed to show any basis for Father Salvas' estimate as to the value of the synthesizer. They did not establish the purchase price or replacement price nor its age or condition at the time of the theft. (*See, People v Bernard*, 123 AD2d 324, *lv denied* 69 NY2d 708.) They offered no proof that Father Salvas had any familiarity with this synthesizer or special knowledge of synthesizers in general. Although the statutory threshold is only $100, it cannot be assumed that any synthesizer, of unknown age, price, and condition, must be worth $100.

Further, the trial court committed reversible error when it refused, based on the evidence adduced, to charge criminal trespass in the third degree as a lesser included offense of burglary in the third degree.

The evidence established that defendant, a homeless man without a coat, entered the Church of the Immaculate Conception at some time on December 22, 1991. The church was locked at 8:30 P.M. following mass. At 10:00 P.M. defendant set off the alarm. There was no evidence of forced entry and none of the poor boxes or valuable religious articles were tampered with. When defendant was discovered, he was clutching a synthesizer that was used with a keyboard to provide music during masses. Defense counsel argued that defendant merely remained in the church after mass in order to keep warm. In order to sustain their burden of proof of third-degree burglary, the People had to establish, beyond a reasonable doubt, that "defendant had the requisite intent to commit a crime on the premises contemporaneous with either an unlawful entry or an unlawful remaining". (*People v Jones*, 184 AD2d 383, 384, citing *People v Gaines*, 74 NY2d 358.) It was just as reasonable to infer from the circumstances that defendant entered the church during mass, remained after it was locked to keep warm and sleep, and that his intent to steal the synthesizer arose spontaneously several hours later when the alarm sounded and he actually engaged in the criminal conduct and took it (*supra*, at 384). Since there was a reasonable view of the evidence that defendant committed trespass and larceny but not burglary, the court should have charged trespass (and larceny) as lesser included offenses.

At the time of his *Sandoval* hearing, defendant had eight prior convictions. He had two felony burglary convictions as

well as misdemeanor convictions for possession of stolen property, criminal mischief, attempted larceny, criminal trespass and possession of a controlled substance. Obviously, most of defendant's convictions were theft-related. Defendant was charged with third-degree burglary and lesser larceny and possession offenses. Mischaracterizing defendant's prior convictions, the court found that "defendant has made a specialty of burglary". Thereafter, without any balancing of relevance and prejudice, the court selected the three offenses from defendant's criminal history that were identical to the top count in this case. Exacerbating the prejudice, the court did not simply permit the prosecutor to elicit the fact that defendant had committed these identical crimes. Instead, it permitted the prosecutor to cross-examine on the nature of the offenses and the specific underlying facts. Confirming its failure to properly balance competing considerations and, indeed, establishing that its rationale was based on an entirely incorrect standard, the court, after finding that "defendant has made a specialty of burglary", expressed its "belief that a jury that will be trying this individual *should know that*".

In making a *Sandoval* determination, a court must consider the specific details and circumstances of a defendant's prior crimes and balance the probative value of this evidence on the issue of defendant's credibility against the risk of unfair prejudice. *(People v Williams*, 56 NY2d 236, 238-239; *People v Sandoval*, 34 NY2d 371, 375 [1974].)

A defendant who has established a pattern of criminal activity may not shield himself and receive immunity from inquiry because his crimes are similar ("*Sandoval* was never intended to provide a defendant with an immunity from having his credibility impeached by virtue of his having developed a specialized field of criminal endeavor." *[People v Weeks*, 156 AD2d 133, 134, *lv denied* 75 NY2d 819]). So too, a prosecutor may not advise a jury, and use as a sword, a defendant's criminal specialty in order to show criminal propensity. Here, defendant had not even made a specialty of burglary. The court's *Sandoval* ruling and the People's summation argument were premised on an incorrect factual conclusion as well as an improper legal standard and were extremely prejudicial to defendant.

Because the error was not harmless, defendant's conviction for fourth-degree grand larceny and fourth-degree possession of stolen property cannot be reduced by us to the lesser included offenses of petit larceny and fifth-degree criminal possession of stolen property, respectively. Instead defendant's

conviction must be vacated and a new trial ordered following a new *Sandoval* hearing. Upon this retrial, defendant may be tried for third-degree burglary (charging larceny and third-degree trespass as lesser included offenses).

He can also be tried for petit larceny and criminal possession of stolen property in the fifth degree since the People, as noted, *supra*, failed to prove the value element of grand larceny in the fourth degree and fourth-degree possession of stolen property. There need be no re-presentation of the lesser counts to a Grand Jury since defendant was indicted for both petit larceny and fifth-degree possession of stolen property. Double jeopardy, therefore, does not preclude retrial on these lesser counts since the jury convicted on the higher counts and never reached them (*cf.*, *People v Gonzalez*, 61 NY2d 633, 635).

Defendant failed to preserve his additional appellate claims as a matter of law and we decline to review them, in any event, in view of our reversal and remand for a new trial. Concur—Sullivan, J. P., Ellerin and Asch, JJ.

Rubin and Kupferman, JJ., concur in a memorandum by Kupferman, J., as follows: Accepting, as I do, the valuation of the synthesizer as testified to by Father Salvas of an approximate value of $300 to $500, its theft is still not sufficient under Penal Law §§ 155.30 and 165.45 to constitute the crimes of grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree.

The testimony was that the synthesizer was being used. A working synthesizer is worth at least $100. However, that figure only comes into play if we proceed on the basis that the synthesizer is an item of religious content. It obviously is not. Therefore, the provisions of Penal Law § 155.30 (9) and § 165.45 (6) do not apply and to constitute the crimes of grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree, requires that the value of the stolen property exceed $1,000.