[772 NYS2d 396]

The People of the State of New York, Respondent, v Chad Hartman, Appellant.

Third Department, February 26, 2004

APPEARANCES OF COUNSEL

*Kindlon & Shanks P.C.*, Albany (*Terence L. Kindlon* of counsel), for appellant.

*Robert M. Carney, District Attorney*, Schenectady (*Matthew Schwartz* of counsel), for respondent.

### OPINION OF THE COURT

SPAIN, J.

Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered July 22, 2002, upon a verdict convicting defendant of the crimes of murder in the second degree, criminal possession of a weapon in the fourth degree and assault in the third degree.

On October 5, 2001, in the course of a fight in the Newest Lunch Bar and Grill in the Town of Rotterdam, Schenectady County, defendant fatally stabbed his half brother, Raef La Pointe, with a knife. Thereafter, defendant was indicted on, among other crimes, two counts of murder in the second degree under theories of intentional and depraved indifference murder. After a trial, a jury acquitted defendant of intentional murder, but convicted him of depraved indifference murder (Penal Law § 125.25 [2]). Defendant was also convicted of criminal possession of a weapon in the fourth degree and assault in the third degree. Sentenced on the murder conviction to 15 years to life imprisonment, with one-year concurrent terms for each of the other two convictions, defendant appeals.

At trial, County Court granted the People's request to charge manslaughter in the first degree as a lesser included offense to intentional second degree murder. The court, however, denied defendant's request to charge manslaughter in the second degree as a lesser included offense of the depraved indifference murder count. Because we find that the denial of defendant's request was in error, we must reverse the second degree murder conviction and grant a new trial (*see People v Green*, 56 NY2d 427, 435 [1982]).

When requested, a lesser included offense must be charged where two conditions are present (*see People v Barney*, 99 NY2d 367, 371 [2003]). The first—"that it is impossible to commit the greater crime without concomitantly committing the lesser of-

fense by the same conduct" (*People v Van Norstrand*, 85 NY2d 131, 135 [1995])—is conceded here. The question remains, however, whether the second element is present—whether there is "a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater" (*id.* at 135; *see* CPL 300.50 [1]; *People v Henderson*, 41 NY2d 233, 236 [1976]; *People v Shuman*, 37 NY2d 302, 304 [1975]). In making that determination, the trial court must view the evidence in the light most favorable to the defendant (*see People v Johnson*, 45 NY2d 546, 549 [1978]; *People v Henderson, supra* at 236).

Our analysis in this regard must begin with the challenging task of articulating the distinction between the crimes of depraved indifference murder and reckless manslaughter (*see generally People v Sanchez*, 98 NY2d 373 [2002]; *People v Register*, 60 NY2d 270 [1983], *cert denied* 466 US 953 [1984]) in order to ascertain whether, on the facts of this case, it would have been possible for the jury to find defendant guilty on the latter, but acquit on the former. "A person is guilty of murder in the second degree when . . . [u]nder circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). "A person is guilty of manslaughter in the second degree when . . . [h]e [or she] recklessly causes the death of another person" (Penal Law § 125.15 [1]). "A person acts recklessly . . . when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk" (Penal Law § 15.05 [3]).

The statutory description for these crimes differs in two respects. "First, 'in a depraved mind murder the actor's conduct must present a grave risk of death whereas in manslaughter it presents the lesser substantial risk of death' " (*People v Sanchez, supra* at 380, quoting *People v Register, supra* at 276). Described otherwise, for murder the conduct must be "imminently dangerous and present[ ] a very high risk of death to others" (*People v Register, supra* at 274).

The Court of Appeals has instructed that the second distinction created by the murder statute—the language "[u]nder circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [2])—is an aggravating factor, an additional requirement which "refers to neither the *mens rea* nor the *actus reus*" but, rather to "the factual setting in which the risk creat-

ing conduct must occur" (*People v Register, supra* at 276). This factor focuses "not upon the subjective intent of the defendant . . . but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct" (*id.* at 277). Thus, the recklessness creating a "substantial and unjustifiable risk" of death (Penal Law § 15.05 [3]) required to establish manslaughter (Penal Law § 125.15 [1]) differs from the recklessness necessary to establish murder by the latter's additional "requirement of proof of aggravating circumstances, objectively assessed, manifesting a depraved indifference to human life, i.e., an 'exceptionally high' or 'very substantial' unjustified risk of death" (*People v Strawbridge*, 299 AD2d 584, 593 [2002], *lvs denied* 99 NY2d 632 [2003], 100 NY2d 599 [2003]; *see People v Register, supra* at 276-279).

Thus, we are called upon to decide whether, viewing the evidence in the light most favorable to defendant, there was a reasonable view of the evidence which would have permitted the jury to make the fine distinction between these crimes and— based upon the factual setting in which defendant's conduct occurred—conclude that, although defendant created a substantial and unjustified risk of death, the risk of death created was not so exceptionally high that his reckless conduct can be placed on the same culpable level as purposeful homicide (*see People v Register, supra* at 274). Because the distinction between these crimes does not turn on the actor's state of mind, we will not consider the impact or merits of defendant's self-defense claims. A jury's acceptance of a self-defense argument would require a finding that the acts were not reckless (*see* Penal Law § 15.05), resulting in an acquittal of both crimes. Instead, in determining whether defendant was entitled to the lesser charge, we must focus on the objective circumstances surrounding defendant's actions, i.e., the factual setting of defendant's reckless conduct and the degree of risk presented by it. That is, could it have been rationally concluded, accepting defendant's version of events, that his conduct in stabbing La Pointe evinced a reckless disregard of a substantial risk of death, but not such a grave risk so as to place the conduct on the same level of culpability as a knowing, intentional taking of a life?

According to defendant, he was the victim of years of physical abuse by La Pointe who, at the time of the incident, he had not seen in months. He unexpectedly encountered La Pointe at the bar that evening and, at first, the brothers were amicable, sharing a drink and conversation. However, when La Pointe insulted

a woman working at the bar, defendant intervened and La Pointe became violent, slamming defendant against a brick wall and choking him. The fighting brothers fell down a stairway before staff and patrons intervened, breaking up the fight and throwing La Pointe out of the bar. Defendant then went into the bathroom and noticed that his tooth had been knocked out. When he returned to the bar room, La Pointe had reentered and attacked defendant a second time, resulting in La Pointe, once more, being escorted out of the bar. La Pointe reentered a third time at which point defendant and La Pointe—some 10 to 15 feet apart—locked eyes and then rushed toward each other. Defendant admitted that, at that point, he held a knife—with a blade approximately three inches long—which he had brought with him to the bar that night. In the process of rushing toward La Pointe, defendant inadvertently cut another patron on the hand (providing the basis for his assault conviction). Defendant claims that he covered his eyes with his arm as the brothers came together, at which point La Pointe received an ultimately fatal stab wound to the abdomen.* La Pointe continued to struggle with defendant and defendant recalls striking upward at one point, blocking La Pointe from beating him about the head. Defendant contends that, eventually, he wrapped his arms around La Pointe to stop the assault.

Several eyewitnesses confirmed that defendant and La Pointe were still "fighting" at this final stage of the altercation and one witness testified that La Pointe was "getting the better" of defendant throughout the fight. Only one witness saw the knife before the fight was over; the blows which defendant inflicted with the knife appeared to onlookers as punches. After defendant and La Pointe separated, La Pointe walked away under his own power, and it was not apparent to any of the witnesses that he had been stabbed. He collapsed once he was outside the bar, and died from his injuries after being transported to the hospital. He sustained a deep stab wound to the abdomen and serious but less substantial knife wounds to his upper left chest and back, as well as multiple minor lacerations, including a cut on his neck.

We are mindful that "[o]ur inquiry is not directed at whether persuasive evidence of guilt of the greater crime exists,

---

* Although defendant's testimony leaves the impression that he did not move and La Pointe charged into him, the physical evidence that defendant cut another patron while running toward La Pointe renders incredible his position that he was not moving.

as it does here, but whether, under any reasonable view of the evidence, it is possible for the trier of facts to acquit defendant on the higher count and still find him guilty of the lesser one" (*People v Van Norstrand*, 85 NY2d 131, 136 [1995], *supra*). So focused, we conclude that it was error to deny defendant's request to charge the lesser included offense of manslaughter in the second degree. In our view, it is possible that a reasonable factfinder could decide that defendant's actions in stabbing La Pointe were reckless because he used unnecessary and unreasonable force, i.e., a deadly weapon, while struggling with La Pointe, creating a substantial and unjustified risk that he would kill him, but that the objective circumstances surrounding this reckless conduct did not directly elevate the crime to murder. Defendant's testimony, if believed, could support the conclusion that he never wielded the knife in a manner which, viewed objectively, carried with it the heightened risk of death required for murder. According to defendant, the first, and fatal, knife wound was inflicted after defendant had covered his eyes, and the force of the blow was the result of La Pointe charging into defendant rather than by any additional motion of defendant's arm. Defendant's testimony that he subsequently directed a blow at La Pointe, stopping La Pointe from punching him in the head, and that he ultimately wrapped his arms around La Pointe during the fight, could support the conclusion that La Pointe's other injuries were the result of defendant's reckless, unjustified use of excessive force during the fight, but not of conduct which created such an exceptionally high risk of death that "though reckless, was equal in blameworthiness to intentional murder" (*People v Register*, 60 NY2d 270, 275 [1983], *supra*; *see People v Davis*, 142 AD2d 791, 792 [1988]; *cf. People v Baptiste*, 306 AD2d 562, 565 [2003]; *People v Callender*, 304 AD2d 426, 426 [2003], *lv denied* 100 NY2d 641 [2003]; *People v Salcedo*, 304 AD2d 309, 310 [2003], *lv denied* 100 NY2d 598 [2003]).

Indeed, the fine distinction between depraved murder and reckless manslaughter is one that, except in the rarest of circumstances, is best left for the finder of fact:

> " 'Whether recklessness is so extreme that it demonstrates similar indifference [to the indifference to human life shown by intentional homicide] is not a question . . . that can be further clarified. *It must be left directly to the trier of fact* under instructions which make it clear that recklessness that can fairly be assimilated to purpose or knowl-

edge should be treated as murder and that less extreme recklessness should be punished as manslaughter' '' (*People v Sanchez*, 98 NY2d 373, 382-383 [2002], *supra*, quoting Model Penal Code § 210.2, Comment 4, at 22 [emphasis added]).

Although we reject defendant's contentions that the depraved indifference murder verdict was not supported by legally sufficient evidence or that the conviction was against the weight of the evidence—finding ample record evidence to support the conclusion that defendant committed a reckless crime which was "exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant's conduct" (*People v Sanchez, supra* at 380)—we are constrained to reverse because, in our view, a rational finder of fact could have concluded otherwise had it been properly charged on manslaughter in the second degree (*see People v Cabassa*, 79 NY2d 722, 730 [1992]).

Turning to defendant's numerous claims of trial error, we find merit in only one. During summation, we agree that defense counsel should have been permitted to comment on the fact that three of the People's witnesses met with the District Attorney at the same time because this fact was in evidence and related to witness credibility. However, we find this error to have been harmless in light of the other, overwhelming evidence in support of defendant's convictions. Further, we are unpersuaded by defendant's argument that this error and other unsubstantiated trial errors demonstrate bias on the part of County Court. Finally, we find no support in this record for defendant's claim of prosecutorial misconduct. Defendant's remaining contentions are either academic in light of the reversal of the murder count, not preserved for appellate review or have been considered and found to be lacking in merit.

CARDONA, P.J., CREW III, PETERS and LAHTINEN, JJ., concur.

Ordered that the judgment is modified, on the law, by reversing defendant's conviction of murder in the second degree under count two of the indictment; matter remitted to the County Court of Schenectady County for a new trial on said count; and, as so modified, affirmed.