■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES DEVONISH, Appellant. [792 NYS2d 438]—

Judgment, Supreme Court, New York County (Budd G. Goodman, J.), rendered December 16, 2002, convicting defendant, after a jury trial, of burglary in the second degree, criminal mischief in the third degree, six counts of possession of burglar's tools, and criminal possession of a controlled substance in the seventh degree, and sentencing him, as a persistent felony offender, to a term of 15 years to life on the burglary conviction and a term of one year on each of the other convictions, with all sentences to run concurrently, affirmed.

The alleged crime occurred at a church whose building was attached to an apartment where the church's superintendent lived with her family. According to the People's case, after the end of the last activity held at the church on the evening of February 11, 2002, the superintendent locked the church's gate and outside doors. At about 4:30 A.M. on February 12, 2002, the superintendent's daughter called 911 to report that she had heard noises suggesting that someone had broken into the church. When police officers arrived at the scene, the superintendent's daughter unlocked the church's gate and doors for them. The officers found a broken chapel window, and subsequently discovered defendant hiding behind a door in a room inside the church. Inches from defendant's feet, the officers found a black canvas bag containing, among other things, six items commonly used as burglary tools: a pair of bolt cutters; a pair of tweezers; a pair of pliers; two pocket knives; and a metal crowbar. After defendant's arrest, the superintendent and her daughter discovered that previously intact locks on doors to a chapel, an office and a cabinet had been broken; they also discovered a brick outside the church near the broken window.

Defendant was the sole witness called by the defense. He testified that he had been told that the church was a "drop-in shelter," and therefore had entered it for the purpose of sleeping there. Defendant claimed that he had found the door to the church unlocked, although he found no one inside. He denied having broken any windows or locks at the church, and also denied that he had been carrying burglar's tools in his black bag. Defendant further testified that he did not recognize any of the burglar's tools received into evidence against him.

Based on the evidence presented in this case, the trial court correctly denied defendant's request to submit criminal trespass in the second degree as a lesser included offense of burglary in the second degree. Although the former crime is a lesser included offense of the latter, there is no reasonable view of the evidence, even when considered in the light most favorable to

defendant, under which he could be found guilty of trespass but not burglary (see CPL 300.50 [1]; *People v Martin*, 59 NY2d 704, 705 [1983]). Stated otherwise, there is no reasonable view of the evidence under which defendant could be found to have knowingly entered the subject building (a dwelling) unlawfully, so as to be guilty of second-degree criminal trespass (Penal Law § 140.15), but not to have intended to commit a crime in the building at the time he entered it, so as to be guilty of second-degree burglary (Penal Law § 140.25 [2]; *see People v Gaines*, 74 NY2d 358, 363 [1989]). A close analysis of the record reveals why this is so.

The People's evidence, if credited by the jury (as it was), established that defendant broke into the church by smashing a window (thereby knowingly committing an unlawful entry) and, once inside, engaged in further crimes, namely, breaking into two locked rooms and a locked cabinet. This evidence strongly supports the inference that defendant intended to commit crimes within the building at the time he unlawfully entered it. By contrast, there is nothing in the People's case to support an inference that, at the time defendant entered the church, he had an innocuous purpose for so doing. Based on the People's evidence (and setting to one side, for the moment, defendant's testimony), the jury could only speculate, without evidentiary support, that defendant had a noncriminal purpose for entering the church, and formed the intention to commit a crime therein only after his entry. The trial court properly declined to submit criminal trespass, given that, based on the prosecution case, the jury, in considering that charge, "would [have been] force[d] . . . to resort to sheer speculation" (*People v Discala*, 45 NY2d 38, 43 [1978] [internal quotation marks and citation omitted]; *see also People v Martinez*, 9 AD3d 679, 681 [2004], *lv denied* 3 NY3d 709 [2004]; *People v Agrelo-Travieso*, 257 AD2d 514, 515 [1999], *lv denied* 93 NY2d 870 [1999]; *People v Clarke*, 233 AD2d 831, 832 [1996], *lv denied* 89 NY2d 1010 [1997], 90 NY2d 856 [1997]).

Defendant argues that the People's case did provide some evidentiary basis for inferring that he originally entered the church without intending to commit a crime therein. Specifically, the church's general contractor testified that he kept some tools in the church basement, and he identified the bolt cutter found in defendant's bag as one of his tools. The contractor was unable to say for certain whether any of the other tools found in defendant's bag belonged to him, but he did say, referring to the tools collectively, that "[t]his is the kind of stuff I have in the basement." Based on this testimony, defendant contends that

the jury could have found that he unlawfully entered the church for an innocent purpose (such as sleeping there), but that, after gaining entry, he saw the contractor's tools and conceived the idea of committing a crime. Although our dissenting colleague finds this argument persuasive, we do not.

Aside from the fact that the contractor positively identified only one of the six tools from defendant's bag as his own, the possibility that defendant found all of those tools after he entered the church does not constitute any evidence, either direct or circumstantial, of what he intended to do inside the church at the time of his entry. While the conclusion that defendant entered the church with the intention of committing a theft therein would be virtually inescapable if it were established that he brought the tools with him (*see People v Scoggins*, 167 AD2d 321, 322 [1990], *lv denied* 77 NY2d 882 [1991]), the conclusion that defendant originally entered the church for a noncriminal purpose would not logically follow from a finding that he found the tools inside the building. Evidence that defendant obtained the tools from the church basement is merely consistent with the unlawful entry having had either an innocent purpose or a criminal purpose; such evidence does not help to *prove* whether the purpose of the entry was innocent or criminal.* As the Third Department recently stated in a similar case, "in the absence of any evidence suggesting a noncriminal purpose for entry, we find no error in refusing to charge the

---

* *People v Henderson* (41 NY2d 233 [1976]), the nearly three-decade-old case on which the dissent relies, is distinguishable. The indictment in *Henderson* charged the defendant with attempted burglary based on an attempt to enter a building unlawfully "with the intent to commit the crime of larceny therein" (*id*. at 234). This specific reference to "larceny" as the intended crime limited the prosecution to that theory of the case, and required it to prove that the defendant specifically intended to commit larceny (and not any other crime) within the building he attempted to enter (*see People v Barnes*, 50 NY2d 375, 379 n 3 [1980]). Since any intended crime other than larceny would not suffice to support a burglary conviction in *Henderson*, it was not necessary for a criminal trespass conviction in that case to be based on evidence that the defendant had a noncriminal purpose in attempting to enter the building. Here, the People have not limited their theory of burglary to one particular intended crime. Accordingly, this case is governed by the general rule that, in a burglary prosecution, the People need not allege or establish any particular crime the defendant intended to commit while unlawfully in the building, and that intent to commit a crime may be inferred from the circumstances of the entry (*see People v Mahboubian*, 74 NY2d 174, 193 [1989], citing *People v Mackey*, 49 NY2d 274, 278-281 [1980]; *People v Gaines*, 74 NY2d at 362 n 1, citing *People v Barnes*, 50 NY2d at 381). Since defendant's intent to commit any crime in the church suffices to support a burglary conviction in this case, a criminal trespass conviction (and thus a criminal trespass instruction) here, unlike in *Henderson*, would have to be supported by specific evidence that the unlawful entry had a noncriminal purpose.

lesser included offense of criminal trespass in the second degree" (*People v Martinez*, 9 AD3d at 681).

Finally, as the dissent apparently agrees, defendant's testimony that he entered the church to find a place to sleep did not provide a basis for submitting criminal trespass to the jury since, according to defendant's integrated account of his conduct on the night in question, he was not guilty of that crime. Again, defendant testified that he believed that he was permitted to walk into the church in the middle of the night to take advantage of a "drop-in shelter," and that he entered the building through an unlocked door, not by breaking in. Thus, if the jury believed defendant, it could not have found that he committed criminal trespass in the second degree, which is defined as "knowingly enter[ing] . . . unlawfully in a dwelling" (Penal Law § 140.15). Moreover, the jury could not properly have arrived at a conviction for criminal trespass by combining the facts from the People's case establishing knowing unlawful entry with defendant's claim to have entered the church for a noncriminal purpose, while discrediting so much of defendant's testimony as was inconsistent with a knowing unlawful entry. We cannot "countenance [such] selective dissection of the integrated testimony of a single witness as to whom credibility, or incredibility, could only be a constant factor" (*People v Scarborough*, 49 NY2d 364, 373 [1980]). "To permit the jury selectively to have found [knowing unlawful entry] but not [intent to commit a crime in the church] would be to countenance its arbitrary sorting of the testimony of a single witness—as if, with scissors and paste, it might construct a wholly artificial line of testimony to support one crime while discarding the portions which it had seen fit to cut away" (*id.* at 373-374; *see also People v Negron*, 91 NY2d 788, 792-793 [1998]).

Defendant's challenge, purportedly based on *Ring v Arizona* (536 US 584 [2002]), to the constitutionality of the procedure under which he was sentenced as a persistent felony offender is raised for the first time on appeal, and is therefore unpreserved for our review (*see People v Rosen*, 96 NY2d 329, 335 [2001], *cert denied* 534 US 899 [2001]; *People v Besser*, 96 NY2d 136, 148 [2001]; *People v Vasquez*, 3 AD3d 343, 344 [2004], *lv denied* 2 NY3d 765 [2004]). In any event, were we to review this issue, we would find defendant's contentions to be without merit (*see People v West*, 12 AD3d 152 [2004]; *People v Phillips*, 2 AD3d 278 [2003], *lv denied* 3 NY3d 645, 710 [2004]).

We perceive no abuse of the sentencing court's discretion in determining to sentence defendant as a persistent felony offender, and we observe that defendant received the minimum

sentence for which he was eligible as a persistent felony offender. Concur—Friedman, Marlow, Sullivan and Williams, JJ.

Saxe, J.P., dissents in a memorandum as follows: When a reasonable view of the evidence would support the conclusion that the defendant committed the lesser offense, but not the greater, the court *must* submit the lesser included offense to the jury upon the request of a party (CPL 300.50). The judgment convicting defendant of burglary in the second degree should be reversed and the matter remanded for a new trial, because, in view of the testimony, it was error to decline defendant's request that the jury be charged as to the lesser included offense of criminal trespass in the second degree.

There is a two-prong analysis for determining a defendant's entitlement to a lesser included offense charge (*see People v Van Norstrand*, 85 NY2d 131, 136 [1995]). First, it must be impossible to commit the greater offense without concomitantly committing the lesser; then, there must be a reasonable view of the evidence to support the conclusion that defendant committed the lesser offense, but not the greater (*id.*). It is undisputed that criminal trespass in the second degree under Penal Law § 140.15 is a lesser included offense of burglary in the second degree under Penal Law § 140.25 (2), since it is impossible to commit burglary in the second degree under Penal Law § 140.25 (2) without necessarily committing criminal trespass in the second degree (*see People v Rickett*, 94 NY2d 929 [2000]; *People v Greene*, 291 AD2d 410 [2002], *lv denied* 98 NY2d 651 [2002]). Both crimes require knowingly entering or remaining unlawfully in a dwelling; the additional element required for burglary in the second degree under Penal Law § 140.25 (2) is that *at the time he entered the building*, the defendant harbored the intent to commit a crime therein (*see People v Gaines*, 74 NY2d 358, 363 [1989]). The only issue here is whether there is a reasonable view of the evidence that would support a finding that the defendant knowingly illegally entered or remained in the dwelling but did not harbor the intent to commit a crime therein *at the time he entered the building*.

While a jury is free to accept or reject part or all of the defense and prosecution's evidence, there must be "some identifiable, rational basis on which the jury could reject a portion of the prosecution's case which is indispensable to establishment of the higher crime and yet accept so much of the proof as would establish the lesser crime" (*People v Scarborough*, 49 NY2d 364, 369-370 [1980]). The basis of rejecting part of the prosecution's case may not rely upon dissecting "the integrated testimony of a single witness as to whom credibility, or incredibility, could only be a constant factor" (*id.* at 373).

The People's witnesses provided evidence that defendant had broken into the premises and was found in the process of attempting to steal property. The church's superintendent testified that at the time of defendant's arrest inside the premises, cupboards were found opened and in a "mess," a cabinet was damaged, the office door lock was broken, the upstairs chapel door was broken, locks twisted off, and a chapel window was broken, with a piece of brick found nearby. Further, the arresting officers stated that they found defendant behind a kitchen door, with a black canvas bag at his feet in which were found a bolt cutter, tweezers, pliers, knives and a steel bar. Certainly, the condition in which the premises were found, and defendant's apparent possession of the tools, provide an appropriate basis from which to infer defendant's intent to steal, as the People posit.

For his part, defendant testified that he had entered the church through an open gate and door, looking for a place to sleep, went in, used the bathroom, then sat down and dozed off; he had awoken and was about to leave when the police arrived. He denied breaking a window or anything else, or having any tools with him.

In denying defendant's request that it submit to the jury the lesser included charge of criminal trespass in the second degree, the trial court explained that "if you believe the defendant's version, he's not guilty of anything because he felt he had proper authority to go in there. And if you believe the People's version, he's not guilty of criminal trespass, he's guilty of burglary." The problem with this reasoning was that the jury could have believed the People's witnesses and, *without rejecting any of the testimony of the People's witnesses*, still have inferred, from the testimony, that at the time defendant illegally entered the premises he lacked the intent to commit a crime once inside.

The basis for this possible inference is certain testimony given by the church's general contractor, in which he stated that he kept some tools in the church basement, and acknowledged that the bolt cutter found in the bag at defendant's feet at the time of his arrest was his. He added that the other items found with defendant were the kinds of things he stored in the church basement, and while he was not *sure* those other items were also his, they "probably" could be.

This testimony was sufficient to undermine the inference that at the time he broke in, defendant intended to commit a crime once inside. If defendant only happened upon the burglar's tools once inside the premises, it could be inferred that at the time he broke in, he did not have with him any tools

to break locks, etc., and was simply intending to shelter indoors for a while on this cold February 11, 2002 night; in that case, defendant would have only formed the intent to use the burglar's tools to commit larceny when he came upon the tools after he had illegally entered onto the premises.

In a case similar to this one, *People v Henderson* (41 NY2d 233 [1976]), the prosecution's testimony indicated that the defendant had broken the glass of a rear window at an automobile dealership office, then fled on foot upon being discovered. The defendant admitted being on the dealership's lot, but denied breaking the glass. He was charged with, and convicted of, attempted burglary in the third degree. In holding that the trial court erred in refusing the defendant's request to charge criminal trespass in the third degree, the Court of Appeals reasoned that the jury, while entitled from the circumstantial evidence to infer an intent to commit a larceny once he gained entry to the premises, was similarly entitled to find a lack of such intent (*id.* at 237). Of particular applicability here, is the Court's remark that "the jury could have decided that he never intended to commit a larceny, but rather was motivated by any one of a conceivable number of other purposes such as, for example, an intent to bed down in the premises . . ." (*id.*).

That reasoning applies in this case equally well. The jury was entitled from the circumstantial evidence to infer a lack of intent to commit a larceny once defendant gained entry to the premises. This being so, the matter must be remanded for a new trial (*see People v Van Norstrand*, 85 NY2d 131 [1995], *supra; People v Gonzalez*, 221 AD2d 203 [1995]).

Nor can the failure to submit a proper lesser included offense be considered harmless error. The People argue that since defense counsel, in summation, argued to the jury that it should find a lack of intent to commit a crime at the time defendant entered the premises, and the jury rejected it by convicting defendant of the burglary, the failure to give the lesser included charge was harmless. However, this rationale must be rejected; accepting it would effectively eviscerate all appellate case law with respect to lesser included offenses, since such rulings are only made after a jury has convicted the defendant of the greater offense.