OPINION OF THE COURT
Barbara G. Zambelli, J.
The defendant Clarence Thomas has been indicted for murder in the second degree and manslaughter in the first degree allegedly committed on or about March 14, 2013 in the County of Westchester, reckless assault of a child and assault in the second degree allegedly committed on or about February 6, 2013 in the County of Westchester and, acting in concert with co-defendant Kayan Johns,[1] endangering the welfare of a child allegedly committed on or about and between February 6, 2013 and March 14, 2013 in the County of Westchester. He now moves by order to show cause and affirmation in support with attachments for a Frye hearing on shaken baby syndrome (SBS), also known as abusive head trauma (AHT). The People’s response consists of an affirmation in opposition and a memorandum of law. Defendant also submitted a reply affirmation with attachments, and the People submitted a surreply thereto. Upon consideration of these papers, as well as review of the grand jury minutes and exhibits and the consent discovery order entered in this case, the motion is disposed of as follows:
Defendant brings this motion for a Frye hearing on SBS/AHT, arguing that “there is no basis in fact for this theory” and that SBS/AHT is no longer generally accepted in the particular field in which it belongs, which defendant asserts is biomechanics and not medicine, as he submits that medicine concerns itself with diagnoses and biomechanics addresses causation. Defend *947 ant further argues that even if medicine is the appropriate field, SBS/AHT is no longer “clearly” accepted in the medical community (Pachnanda affirmation ¶¶ 37, 38, 40, 42, 44). Thus, defendant submits a Frye hearing is required herein, and further seeks an order granting preclusion of the “testimony, opinion and any evidence, including but not limited to, models, dolls and demonstrations proffered regarding Non-Accidental Trauma (Shaken Baby Syndrome/Abusive Head Trauma).”
The People oppose the motion, arguing that it should be denied without a hearing. The People argue that SBS is generally accepted within the relevant scientific community, which community, they submit is the medical field. In support of their argument, the People reference numerous New York cases which recognize SBS/AHT and submit that the New York State Legislature enacted Penal Law § 120.02, reckless assault of a child, one of the crimes for which defendant is charged, specifically to address cases of SBS/AHT. They further argue that, at any trial herein, the defense will be able to cross-examine their experts and defendant will have an opportunity to present his own experts to refute the conclusions of the People’s experts.
In reply, defendant argues that the legislative intent behind Penal Law § 120.02 is irrelevant, and that the statute is unconstitutional. He further argues that to the extent that the People rely upon Matter of Lou R. (131 Misc 2d 138 [Fam Ct, Onondaga County 1986]) as the seminal case in New York recognizing SBS/AHT, that this case defined SBS/AHT as resulting from “seemingly harmless shaking” and here, the People’s theory is that SBS/AHT is violent shaking. He further argues that this case is of dubious precedential value, given that it cites no medical or scientific studies. Defendant also argues that in opposing his motion, the People failed to address the current state of the medical and biomechanical communities’ acceptance of SBS/AHT. Defendant further argues that since the People have failed to refute defendant’s “scientific and medical evidence debunking” SBS/AHT, the grand jury minutes should be reexamined and the indictment dismissed. Defendant also moves to reopen the pretrial hearings in this matter, as he submits, the determination regarding the granting of a Frye hearing goes directly to whether there was probable cause to arrest him. In surreply, the People object that the defendant’s arguments as to the unconstitutionality of Penal Law § 120.02, for the reinspection of the grand jury minutes and dismissal of the indictment and for the reopening of the pretrial hearing, are all improperly *948 raised for the first time in reply and should not be considered by this court. They further submit that in any event, they are without merit, as they dispute defendant’s contention that SBS/ AHT is no longer generally accepted by the scientific community.
In New York, expert testimony based upon scientific principles or procedures is admissible only after that principle or procedure has gained general acceptance in the relevant field (People v Wesley, 83 NY2d 417, 422 [1994], citing Frye v United States, 293 F 1013 [DC Cir 1923]). As Chief Judge Kaye explained in her concurring opinion in People v Wesley, it is not for courts “to determine whether the method was or was not reliable . . . but whether there was consensus in the scientific community as to its reliability. The Frye test emphasizes counting scientists’ votes, rather than on verifying the soundness of a scientific conclusion” (83 NY2d at 439 [internal quotation marks and citations omitted]). It is not the job of the court to decide which expert’s conclusions are correct (Marsh v Smyth, 12 AD3d 307, 311 [1st Dept 2004]). Moreover, a Frye hearing is not required where the expert testimony offered does not involve any novel procedures or innovative scientific theories (see Lipschitz v Stein, 65 AD3d 573, 575-576 [2d Dept 2009]; People v Spencer, 108 AD3d 1081, 1082 [4th Dept 2013], lv denied 22 NY3d 1159 [2014]; People v Garrow, 75 AD3d 849 [3d Dept 2010]) and need not be held where the court can rely on previous rulings in other court proceedings to aid it in determining the admissibility of the proffered testimony (People v LeGrand, 8 NY3d 449, 458 [2007]).
As an initial matter, while defendant argues that the relevant scientific community should be those working in the field of biomechanics and not medicine, this argument is unavailing. In support of his contention that SBS is no longer a viable theory defendant himself cites to the work of several physicians, including John Plunkett, M.D., an expert proffered by him. Defendant’s contention that physicians are limited to diagnosing conditions and not determining causation is belied by the fact that physicians frequently testify in court regarding causes of injury and death in a wide variety of criminal and civil matters. Additionally, numerous courts have recognized physicians as being qualified to give expert testimony regarding whether a child had SBS/AHT (see e.g. People v Van Norstrand, 85 NY2d 131 [1995]; Matter of Infinite G., 11 AD3d 688 [2d Dept 2004]; People v Goodridge, 251 AD2d 85 [1st Dept 1998]; People v Moore, 112 AD3d 981 [3d Dept 2013]; People v Benjamin, 204 AD2d 996 *949 [4th Dept 1994]; Matter of Lou R., 131 Misc 2d 138 [Fam Ct, Onondaga County 1986]).
Defendant’s request for a Frye hearing is denied. Prior New York case law recognizes SBS/AHT as being generally accepted in the relevant scientific community (Matter of Antoine J., 185 AD2d 925 [2d Dept 1992]; People v Yates, 290 AD2d 888 [3d Dept 2002]; Matter of Lou R.; Mastowski v Superintendent, 2011 WL 4955029, *19, 2011 US Dist LEXIS 120060, *58 [WD NY, Oct. 18, 2011, No. 10-CV-0445T] [“New York courts have held that shaken baby syndrome is no longer a scientific theory”]). Numerous other cases, including cases from the Court of Appeals and every Appellate Division, recognize it as legitimate without comment; many of these cases are also of relatively recent vintage (see e.g. People v Wong, 81 NY2d 600 [1993]; People v Van Norstrand; People v Caldavado, 78 AD3d 962 [2d Dept 2010]; People v Sulayao, 58 AD3d 769 [2d Dept 2009], lv denied 12 NY3d 822 [2009]; Matter of Infinite G., 11 AD3d 688 [2004]; People v Hershey, 85 AD3d 1661 [4th Dept 2011], lv denied 18 NY3d 883 [2012], cert denied 566 US —, 132 S Ct 2692 [2012]; Matter of Damien S., 45 AD3d 1384 [4th Dept 2007], lv denied 10 NY3d 701 [2008]; People v Kendall, 254 AD2d 809 [4th Dept 1998], lv denied 92 NY2d 983 [1998]; People v Moore; Matter of Seamus K., 33 AD3d 1030 [3d Dept 2006]; Matter of Joaquin Enrique C. [Anna Julia F.], 79 AD3d 548 [1st Dept 2010]; People v Goodridge; see also People v Santiago, 22 NY3d 740, 754 [2014] [referring to expert demonstrations during trials in SBS/ AHT cases]).
To the extent that defendant argues that this precedent is not relevant, since it is all based upon Matter of Lou R. (131 Misc 2d 138 [1986]), which he submits defines SBS as resulting from “seemingly harmless shaking” and not violent shaking, his argument is unavailing. Matter of Lou R. states that the most common symptoms of SBS, “which can be inflicted by seemingly harmless shakings, are bleeding and/or detached retinas and other bleeding inside the head” but does not rule out violent shaking (id. at 142). The expert in that case testified that SBS results from “an infant being held around the chest and shaken back and forth; this creates a ‘whiplash’ effect” (id. at 140). Here the People’s bill of particulars accuses defendant, inter alia, of subjecting the child to blunt force trauma, subjecting her “to extreme rotational cranial acceleration and deceleration,” also known as whiplash, shaking her or slamming or *950 throwing her so as to impact her head on a hard surface or object and causing her to suffer “interm[e]ningeal hemorrhages, specifically subarachnoid hemorrhages and subdural hemorrhages by shaking her or by slamming or throwing her so as to impact her head on a hard surface or object”; the bill of particulars also alleges that defendant “violently shook [the child], grabbed her leg with such force he left grip marks on her thighs, repeatedly subjected her to blunt force trauma.” Accordingly, Matter of Lou R. and the cases stemming from it are applicable to this case.
Moreover, the court takes judicial notice of the fact that SBS/AHT is recognized by such governmental organizations as the Centers for Disease Control and Prevention[2] and the National Institute of Neurological Disorders and Stroke, a component institute of the National Institutes of Health[3] (Kingsbrook Jewish Med. Ctr. v Allstate Ins. Co., 61 AD3d 13, 20 [2d Dept 2009] [a court may take judicial notice of governmental websites]). SBS/AHT is also recognized by such renowned organizations as the American Academy of Pediatrics[4] and the Mayo Clinic[5] (see People v Jones, 73 NY2d 427, 431 [1989] [“a court may take judicial notice of facts which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy” (internal quotation marks omitted)]). The American Academy of Pediatrics, which claims a membership of “62,000 primary care pediatricians, pediatric medical sub-specialists and pediatric surgical specialists dedicated to the health, safety, and well being of infants, children, adolescents and young adults” states on its website that “[t]he existence of AHT in infants and young children is a settled scientific fact. The scientific support for the diagnosis of AHT comes from over 40 years of research in a broad array of clinical and basic science disciplines, including pediatrics, neurosciences, ophthalmology, orthopaedics, radiology, pathology, *951 epidemiology, and biomechanics.”[6] Given the legal precedent, which includes cases which postdate much of the research the defendant cites, and the continued recognition granted SBS/ AHT by governmental and other nationally renowned organizations, it cannot be said that SBS/AHT has been, as defendant alleges, “debunked.”
While defendant’s motion seeks a Frye hearing on SBS/AHT, he posits that the purpose of the hearing is not only to determine the admissibility of expert testimony and evidence regarding SBS/AHT, but for the court to “address the science behind” the questions of whether humans can generate a sufficient amount of acceleration/deceleration force necessary to cause subdural hematomas, whether retinal hemorrhages can arise from a direct impact or as a secondary symptom of subdural hematomas or resulting brain swelling, or if they could only arise from the shaking of a child, and what minimum impact velocity is required to cause a subdural hematoma (Pachnanda affirmation ¶¶ 24-25). However, as noted above, the purpose of a Frye hearing is to determine whether a scientific principle or procedure is generally accepted in the relevant field, and it is not for the court to verify the soundness of scientific conclusions (People v Wesley, Marsh v Smyth, 12 AD3d at 311).
The cases cited by defendant in support of his request for a Frye hearing and for an order precluding the People from offering any testimony or demonstrations in support of it recognize not that there is “no basis in fact” for SBS/AHT, as defendant would have it, but rather that “there has been a shift in mainstream medical opinion” and “there are now competing medical opinions” regarding SBS/AHT and also that “the new evidence does not completely dispel the old evidence” (State v Edmunds, 308 Wis 2d 374, 391, 746 NW2d 590, 598-599 [2008] [referring to the specific injuries of the child in that case]; State v Louis, 332 Wis 2d 803, 798 NW2d 319 [2011] [table; text at 2011 WL 867677, *4, 2011 Wise App LEXIS 201, *10-11 (2011) (“the medical community is sharply divided on whether the symptoms commonly associated with shaken baby syndrome are exclusively characteristic of that diagnosis”)]). However, these courts have not conducted Frye hearings or precluded the prosecution from offering expert testimony regarding SBS/AHT; rather, they have granted those defendants new trials so that *952 they may present their own expert testimony challenging SBS/ AHT and the testimony of the prosecutions’ experts (State v Edmunds; State v Louis; Del Prete v Thompson, 10 F Supp 3d 907 [ND 111 2014]; see also People v Hershey [defense expert testified at trial to challenge the validity of SBS/AHT and the prosecution’s expert testimony in support thereof; court held that issue of conflicting expert testimony was the province of the jury to resolve]).[7]
Lastly, regarding defendant’s arguments that Penal Law § 120.02 is unconstitutional, that the grand jury minutes should be reexamined and the indictment dismissed because the People proffered testimony regarding SBS/AHT, and his motion to reopen the pretrial hearing in this matter, these arguments were improperly raised by defendant for the first time in reply. In any event, they are without merit.
As to defendant’s allegation that Penal Law § 120.02 is unconstitutional, defendant has failed to provide notice to the Attorney General that he was challenging the statute, as per Executive Law § 71. His conclusory allegation also fails to overcome the strong presumption of constitutionality afforded to legislatively enacted statutes (People v Davis, 13 NY3d 17, 23 [2009]). As to his motion for reinspection of the grand jury minutes and dismissal of the indictment on the ground that the People improperly offered testimony in regard to SBS, aside from being untimely, as this argument could have been raised in the omnibus motion, defendant’s argument is without merit for the reasons set forth above, and for the further reasons that evidence submitted to the grand jury must be viewed in the light most favorable to the People (People v Jensen, 86 NY2d 248, 251 [1995]) and that for purposes of grand jury proceedings, evidence is to be considered competent until nullified (People v Oakley, 28 NY2d 309, 312 [1971]). Defendant’s motion to reopen the pretrial hearing on whether probable cause existed for *953 his arrest is also denied, given this court’s denial of his request for a Frye hearing (id.).
Accordingly, the defendant’s request for a Frye hearing regarding SBS/AHT and his related request for an order precluding the People from offering testimony, opinion and any evidence regarding SBS/AHT is denied. However, the defendant remains able to cross-examine the People’s experts and to present his own experts to refute the conclusions of the People’s experts at any trial herein.

. Defendant Kayan Johns pleaded guilty in this case; thus, this decision and order applies solely to the remaining defendant Clarence Thomas.

. Centers for Disease Control and Prevention, Heads Up: Prevent Shaken Baby Syndrome, http://www.cdc.gov/concussion/headsup/sbs.html.

. National Institute of Neurological Disorders and Stroke, NINDS Shaken Baby Syndrome Information Page, http://www.ninds.nih.gov/disorders/ shakenbaby/ shakenbaby.htm.

. American Academy of Pediatrics, Abusive Head Trauma (Shaken Baby Syndrome), http://www.aap.org/en-us/about-the-aap/aap-press-room/aap-pressroom-media-center/ Pages/Abusive-Head-Trauma-Fact-Sheet.aspx.

. Mayo Clinic, Disease and Conditions, Shaken Baby Syndrome, Definition, http://wwwmayoclinic.org/diseases-conditions/shaken-baby-syndrome/ basics/definitions/con-20034461.

. American Academy of Pediatrics, Abusive Head Trauma (Shaken Baby Syndrome), http://www.aap.org/en-us/about-the-aap/aap-press-room/aap-pressroom-media-eenter/Pages/Ábusive-Head-Trauma-Fact-Sheet.aspx.

. In support of his contention that the court should grant a Frye hearing herein, defendant cites the apparently unpublished November 5, 2007 decision of the Circuit Court of Shelby County, Missouri (Grimm, J.) in the case of State v Hyatt (No. 06M7- CR00016-02) in which the court granted a Frye hearing and after said hearing precluded the prosecution from offering evidence regarding SBS/AHT. Aside from not being binding precedent upon this court, this decision is only three paragraphs long and fails to set forth all the facts in support of its determination. In any event, the scant information contained therein reveals that it is factually distinguishable from the case at bar, as the diagnosis of SBS/AHT in that case was “based only upon a finding that the child had a subdural hematoma, retinal bleeding and the absence of evidence of cranial trauma” {id., slip op at 1).