■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERALD E. LUTES, Jr., Appellant. [728 NYS2d 554] —Mercure, J. P. Appeal from a judgment of the County Court of Greene County (Lalor, J.), rendered June 19, 1998, upon a verdict convicting defendant of the crime of manslaughter in the second degree.

Defendant and two codefendants were indicted on a single count of depraved indifference murder for the death of Kenneth Strickland, whose body was found in several inches of water in the spillway of a pond in Greene County. The cause of death was determined to be multiple blunt force injuries and drowning. The autopsy revealed that Strickland had numerous blunt force injuries, including bruises and abrasions, on all surfaces of his body and that he had been struck with such force that his liver had been severely lacerated, resulting in internal bleeding that would have been sufficient in and of itself to cause his death if he had not drowned. Strickland's blunt force injuries were sustained in a fight which began during a party at defendant's residence, escalated into a beating of Strickland at the nearby residence of defendant's father and ended when Strickland was dragged from the back of a car and thrown over the guardrail of a bridge into the area of the pond where his body was found by a fisherman the next day. After trial, defendant was acquitted of the murder charge and convicted of the lesser included offense of manslaughter in the second degree.

On this appeal, defendant claims that the evidence was legally insufficient to support the verdict and that the verdict was against the weight of the evidence. We disagree. Defendant does not dispute that Strickland was beaten, and the severity of that beating was demonstrated by the extensive injuries revealed at the autopsy, including the severely lacerated liver. Nor does defendant dispute that Strickland was thrown over the guardrail of a bridge and into the pond. Rather, defendant claims that his role in the events was limited to that of peacemaker and that the beating was inflicted by the codefendants despite defendant's efforts to protect Strickland. Thus, he claims that to the extent the blunt force injuries caused or contributed to Strickland's death, he is not responsible. Defendant also claims that, although he was present when Strickland was thrown into the pond, he did not participate and had no reason to believe that Strickland, who could swim, would drown.

In contrast to defendant's direct testimony regarding his role in the events, there is other evidence, including defendant's written statement to the police, which demonstrates that while

defendant may have intervened and broken up the initial fight at his residence, he thereafter joined with his codefendants in the subsequent events which caused Strickland's death. Thus, in describing the concerted assault on Strickland that occurred at the residence of defendant's father, defendant's statement asserts, "Steven got him, DJ got in the middle and I tried to get a few shots in." Defendant's mother testified that defendant was involved in the assault on Strickland that she observed. Thereafter, according to defendant's statement, "we shoved Ken into the car" and drove to the pond, where "the three of us wrestled him out of the car and through [*sic*] him over." The statement further acknowledges that during the ride to the pond, one of the codefendants continued to beat Strickland. The next morning, at defendant's request, a friend drove defendant back to the pond where they saw Strickland's body. The friend testified that when he asked defendant what had happened the previous night, "he said that they had beaten him up pretty bad and when he found out that his father had called the police, they took him in the car and brought him down and threw him in the pond."

Applying the standard for reviewing the legal sufficiency of the evidence (*see, People v Contes*, 60 NY2d 620, 621), we conclude that a rational trier of fact could have found the essential elements of manslaughter in the second degree beyond a reasonable doubt. A person is guilty of manslaughter in the second degree when "[h]e recklessly causes the death of another person" (Penal Law § 125.15 [1]) "by creating and consciously disregarding a substantial and unjustifiable risk of death" (*People v Hart*, 266 AD2d 698, 700, *lv denied* 94 NY2d 880; *see*, Penal Law § 15.05 [3]). Contrary to defendant's claim, the evidence as outlined above was sufficient to permit the jury to conclude that he actively participated in the beating of Strickland and in throwing him off the bridge. The jury could also have found that by severely beating Strickland and then throwing him off the bridge without any regard for the nature and extent of his injuries from the severe beating and without any regard for the actual depth of the water at the bridge, and by thereafter driving off without any regard for Strickland's ability to extricate himself from the pond, defendant and his cohorts created a substantial and unjustifiable risk of death (*see, e.g., People v Johnson*, 199 AD2d 418, *lv denied* 83 NY2d 854; *People v Joseph AA.*, 92 AD2d 649) and engaged in conduct which "constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]).

Based on his testimony that he "didn't see no reason why

Kenny would have died," defendant claims that the evidence is insufficient to establish his awareness of the risk. A defendant's criminal culpability cannot be proved by direct proof but, instead, must "be inferred from the facts and circumstances proved" (*People v Green*, 56 NY2d 427, 432). From the facts and circumstances proved in this case, the jury could have inferred that defendant was aware of the risk of death created by the severe beating of Strickland followed by the callous act of throwing him off the bridge. Defendant's claim that causation was not established is similarly without merit. "For criminal liability to attach, a defendant's actions must have been an actual contributory cause of death, in the sense that they 'forged a link in the chain of causes which actually brought about the death'" (*Matter of Anthony M.*, 63 NY2d 270, 280, quoting *People v Stewart*, 40 NY2d 692, 697). The jury could have found that the actions of defendant and his cohorts "forged a link" in Strickland's death from blunt force injuries and drowning. Accordingly, we conclude that there was legally sufficient evidence to support the verdict and, exercising our factual review power (*see, People v Bleakley*, 69 NY2d 490, 495), we cannot say that the verdict reflects a failure to "give the evidence the weight it should be accorded" (*id.*, at 495).

Next, assuming that the admission of the results of DNA testing of certain blood and hair samples was error, as defendant claims, the error does not require reversal of the conviction. The test results related to certain events, such as the fact that Strickland was beaten and the fact that he was thrown over the guardrail of the bridge, which were established beyond a reasonable doubt by other evidence, including the results of the autopsy and defendant's written statement. In fact, defendant did not dispute the occurrence of these events but, instead, focused on his role in the events, an issue on which the DNA test results had no relevance. The admission of the evidence was, at most, nonconstitutional error (*see, People v Murphy*, 128 AD2d 177, 184, *affd* 70 NY2d 969), and we conclude that, excising the DNA test results, the quantum and nature of the proof was such that the jury "would almost certainly have convicted the defendant" and that there is no "significant probability * * * that the jury would have acquitted the defendant had it not been for the error" (*People v Crimmins*, 36 NY2d 230, 242).

In addition, assuming that the hair and blood samples not consumed in the DNA tests constituted *Brady* material, as defendant claims, there is no "reasonable possibility that had the evidence been disclosed, the result would have been different"

(*People v Stevens*, 216 AD2d 676, 678, *lv denied* 87 NY2d 908; *see, People v Vilardi*, 76 NY2d 67, 77). We also conclude that the remaining trial error asserted by defendant was adequately addressed by County Court's prompt curative measure and does not warrant reversal of the conviction. Finally, inasmuch as defendant's challenge to the severity of the 5 to 15-year prison sentence is based on his claim that his role in the events leading to Strickland's death was limited to breaking up the fight on several occasions, a claim the jury obviously rejected in the exercise of its fact-finding authority to resolve issues of credibility, there is no merit to defendant's argument that the sentence was harsh and excessive. Considering the senseless and vicious nature of the crime, we see no basis to disturb the sentence.

Crew III, Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.