■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLEMMETH L. MADDOX, Appellant. [818 NYS2d 664]—

Cardona, P.J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered September 14, 2004, upon a verdict convicting defendant of the crimes of murder in the second degree, perjury in the first degree and reckless endangerment in the second degree.

Defendant was arrested after his live-in girlfriend's four-month-old infant, who had been under his care, died from shaken baby syndrome. Upon allegations that defendant lied about his handling of the infant to the grand jury, defendant

was charged by indictment with the crimes of depraved indifference murder, perjury in the first degree and reckless endangerment in the first degree. Following a jury trial, defendant was convicted of depraved indifference murder, perjury in the first degree and reckless endangerment in the second degree and sentenced, as a second felony offender, to a prison term aggregating 18 years to life.

Addressing first defendant's challenge to the legal sufficiency of the evidence supporting his murder conviction, defendant argues that the proof was insufficient to establish that he acted recklessly and under circumstances evincing a depraved indifference to human life, and, alternatively, that his reckless conduct did not present a grave risk of death. We disagree with both contentions and conclude that there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495 [1987]).

The crime of depraved indifference murder of a child is a nonintentional homicide which requires proof that the adult defendant, "[u]nder circumstances evincing a depraved indifference to human life, . . . recklessly engages in conduct which creates a grave risk of serious physical injury or death to another person less than eleven years old" (Penal Law § 125.25 [4]; *see People v Strawbridge*, 299 AD2d 584, 592 [2002], *lv denied* 99 NY2d 632 [2003]). A reckless mental state exists when a person "is aware of and consciously disregards a substantial and unjustifiable risk" that death or serious injury will occur (Penal Law § 15.05 [3]; *see People v Register*, 60 NY2d 270, 276 [1983], *cert denied* 466 US 953 [1984]). Moreover, an objective assessment of the evidence must demonstrate that the defendant's acts were committed "[u]nder circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [4])—an additional element of the crime that refers to the factual setting in which the risk-creating conduct must occur and "reflect[s] wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator's inexcusable acts" (*People v Suarez*, 6 NY3d 202, 213 [2005]; *see People v Sanchez*, 98 NY2d 373, 379-380 [2002]).

The evidence adduced at trial, viewed in a light most favorable to the People, was sufficient to sustain the jury's verdict (*see People v Contes*, 60 NY2d 620, 621 [1983]). The infant's mother testified that defendant struck the infant in the head and vigorously shook her before throwing her head first into a bassinet within hours of her death. The mother further

indicated that, when she notified defendant that the infant was not responsive, he did not call for an ambulance and told her to tell the police that the infant accidentally fell on the floor. A witness who observed defendant with the infant a week before her death also testified that he saw defendant shake the infant so that her head moved back and forth "like the baby was trying to gasp for air," and then threw her into a stroller. In addition, expert medical evidence revealed that the infant's injuries were not consistent with defendant's version of events and reflected a pattern of abuse. Specifically, autopsy reports showed that the infant had multiple healing bone fractures and brain injuries that could not have been recently inflicted. At the same time, other medical proof showed hemorrhaging around the optic nerve and bruising on the scalp and face that was consistent with recent shaken impact injuries and blunt force trauma.

Given the level of force required to inflict these fatal injuries and defendant's attempt to cover up his conduct, the jury reasonably could have concluded that defendant was aware of an obvious risk of death to the infant (*see People v Henderson*, 305 AD2d 940, 941-942 [2003], *lv denied* 100 NY2d 582 [2003]; *People v Miller*, 290 AD2d 814, 815 [2002], *lv denied* 98 NY2d 678 [2002]; *People v Dexheimer*, 214 AD2d 898, 901 [1995], *lv denied* 86 NY2d 872 [1995]; *compare People v Baker*, 4 AD3d 606, 611 [2004], *lvs denied* 2 NY3d 795 [2004]). Furthermore, the proof that defendant severely abused the infant over a prolonged period of time and failed to immediately summon emergency aid after he knew that the infant was injured—a delay which was shown to have precipitated the infant's death—was sufficient to show that defendant's conduct presented a grave risk of death and evinced a depraved indifference to the infant's plight (*see People v Britt*, 283 AD2d 778, 779-780 [2001], *lv denied* 96 NY2d 916 [2001]; *People v Parrotte*, 267 AD2d 884, 886 [1999], *lv denied* 95 NY2d 801 [2000]; *People v Bryce*, 174 AD2d 945, 946 [1991]).

Turning to defendant's weight of the evidence challenge, because a different verdict would not have been unreasonable, we weigh the evidence presented at trial by considering the proof in a neutral light while according due deference to the jury's opportunity to hear the testimony and observe the demeanor of the witnesses (*see People v Bleakley, supra* at 495). Despite testimony that the mother was the infant's primary caregiver and failed to summon medical help on the day of her death, the jury clearly rejected the defense theory that the mother was responsible for the abuse. The jury was within its province, as the trier of fact, to credit testimony presented by

the People that defendant shook the infant on more than one occasion and, because it reasonably could have concluded from all of the evidence that defendant was the perpetrator, we discern no error (*see People v Strawbridge, supra* at 593-594).

Next, we are not persuaded by defendant's contention that the grand jury proceeding was defective under CPL 210.35 (5) because the same grand jury that handed up the murder and reckless endangerment charges also handed up the perjury charge. Inasmuch as grand jury proceedings bear the presumption of regularity, a defendant must show " 'a particularized need or gross and prejudicial irregularity in the proceedings or some other similarly compelling reason' " to warrant dismissal of the indictment (*People v Serkiz*, 17 AD3d 28, 31 [2005], quoting *People v Lewis*, 98 AD2d 853, 854 [1983]). Here, the fact that the grand jury sustained the perjury charge did not signal that it had actually determined the veracity of the murder and reckless endangerment charges. Rather, the grand jury's determination simply demonstrated that it had found sufficient evidence to accuse defendant of those crimes (*see People v Pease*, 8 AD3d 692, 692-693 [2004]). Defendant concedes that the procedure employed is not per se improper and, because he has not made a specific "showing of prosecutorial misconduct, fraudulent conduct or any other error potentially prejudicing the [g]rand [j]ury's ultimate decision" (*People v De Vivo*, 282 AD2d 770, 772 [2001], *lv denied* 96 NY2d 900 [2001]), we find no basis to dismiss the indictment. Moreover, defendant was not arraigned "in a local criminal court upon a currently undisposed of felony complaint" charging him with perjury (CPL 190.50 [5] [a]) and, thus, "the People had no duty to inform him of his right to testify before the grand jury" in connection with that charge (*People v Gibbs*, 12 AD3d 710, 710 [2004]).

Addressing the issue of defendant's pre-*Miranda* statements to the police, we find that they were properly admitted at trial. The record supports County Court's findings that defendant voluntarily accompanied police officers to the police station, that the climate of the initial interview was not accusatorial in nature, and that frequent breaks were given during questioning. During that time, defendant did not request an attorney, the opportunity to make a telephone call or for the interview to cease. Furthermore, defendant was not restrained until the infant's mother told police that defendant had abused the infant earlier that day, at which point defendant was administered *Miranda* warnings. Accordingly, County Court properly determined that defendant could not have reasonably believed that he was subject to restrictions so as to be deemed in custody for *Mi-*

*randa* purposes (*see People v Langlois*, 17 AD3d 772, 773-774 [2005]; *People v Vandunk*, 2 AD3d 1058, 1059 [2003], *lv denied* 3 NY3d 742 [2004]; *People v Kreydatus*, 305 AD2d 935, 936 [2003], *lv denied* 100 NY2d 595 [2003]). In addition, we find no error in County Court's ruling that defendant's post-*Miranda* statements to the police, which followed defendant's knowing and voluntary waiver of his *Miranda* rights, were admissible (*see People v Lyons*, 4 AD3d 549, 551-552 [2004]; *People v Scotchmer*, 285 AD2d 834, 836 [2001], *lv denied* 96 NY2d 942 [2001]).

Finally, we find no merit to defendant's ineffective assistance of counsel claim, predicated upon his assertion that trial counsel failed to move to change venue, introduce certain evidence at trial, and that new counsel who filed the CPL 330.30 motion inartfully articulated the basis for the motion. Viewing the evidence, the law and the circumstances of this case in its totality and as of the time of counsels' representation (*see People v Baldi*, 54 NY2d 137, 147 [1981]), we find that defendant received meaningful representation. In addition, defendant's claim that County Court erred by failing to hold a hearing on his motion to set aside the verdict (*see* CPL 330.30 [1]), in which he alleged that trial counsel improperly advised him not to testify, is unpreserved for our review inasmuch as he did not request a hearing (*see* CPL 470.05 [2]; *People v Kirby*, 280 AD2d 775, 778 [2001], *lv denied* 96 NY2d 920 [2001]). In any event, defendant unequivocally stated on the record that he did not wish to testify at trial and he thereby failed to demonstrate grounds sufficient to disturb the verdict, making the summary denial of his CPL 330.30 motion appropriate (*see People v Carter*, 199 AD2d 817, 820 [1993], *affd* 86 NY2d 721 [1995]).

Crew III, Spain, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.