■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES B. SMITH, Appellant. [838 NYS2d 690]—

Rose, J. Appeal from a judgment of the County Court of Greene County (Lalor, J.), rendered May 23, 2006, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant was indicted for murder in the second degree and manslaughter in the second degree as the result of the death of the three-year-old daughter of his live-in girlfriend. At the jury trial, evidence of the young victim's prior injuries was admitted and it was shown that she had been under defendant's sole care when she sustained the severe head trauma which later caused her death. The jury found defendant guilty of depraved indifference murder and County Court sentenced him to a prison term of 25 years to life. Defendant appeals.

Initially, we find that the admission of evidence of the victim's prior injuries, including a brain injury and retinal hemorrhage which had occurred three months earlier and were attributed to shaken baby syndrome, was proper because such evidence was "material and relevant on the issues of whether defendant's actions evinced a depraved indifference to human life, whether [the victim's] death was accidental, and the identity of the perpetrator of the crime" (*People v Holloway*, 185 AD2d 646, 647 [1992], *lv denied* 80 NY2d 1027 [1992] [*citation omitted*]; *see People v Henson*, 33 NY2d 63, 72 [1973]; *People v Caccese*, 211 AD2d 976, 978 [1995], *lv denied* 86 NY2d 780 [1995]). Contrary to defendant's contention, County Court heard his arguments opposing the People's pretrial *Molineux/Ventimiglia* application, the relevant facts were not in dispute and the court issued a detailed ruling after weighing the evidence's probative value against its potential for prejudice (*see People v Milot*, 305 AD2d 729, 731 [2003], *lv denied* 100 NY2d 585 [2003]). Moreover, defense counsel did not seek a limiting instruction and, thus, that issue is unpreserved (*see* CPL 470.05 [2]; *People v De Fayette*, 16 AD3d 708, 709 [2005], *lv denied* 4 NY3d 885 [2005]). Nor did defense counsel's omission constitute ineffective assistance. Counsel declined such an instruction on the record after a colloquy with County Court in which it was clear that doing so was part of a legitimate trial strategy (*see People v Rote*, 28 AD3d 868, 870 [2006]; *People v Rosado*, 13 AD3d 902, 904 [2004], *lv denied* 4 NY3d 835 [2005]).

Defendant also contends that the evidence was legally insufficient to establish that he had acted recklessly and with depraved indifference because it did not show an awareness that his conduct would pose a grave risk of death to the victim (*see* Penal Law § 125.25 [2]; *see e.g. People v Stewart*, 36 AD3d 1156, 1158-1159 [2007]; *People v Strawbridge*, 299 AD2d 584, 592 [2002], *lv denied* 99 NY2d 632 [2003]). We disagree. "A person acts recklessly with respect to a result . . . when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur" (Penal Law § 15.05 [3]). The element of depraved indifference to human life "reflect[s] wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator's inexcusable acts" (*People v Suarez*, 6 NY3d 202, 213 [2005], citing *People v Best*, 85 NY2d 826 [1995] and *People v Poplis*, 30 NY2d 85 [1972]).

The medical evidence here established that the victim's fatal injuries were caused by nonaccidental trauma, consistent with her head having been very violently shaken, and were inconsistent with defendant's account. The injuries included bruises on her head, a subdural hematoma, retinal hemorrhages in both eyes and multiple retinal detachments in one eye. The victim's prior injuries, which included broken bones, a subdural hematoma and retinal hemorrhage, began and continued while defendant was residing with and caring for the victim during the six months preceding her death. Even though the treating physicians and social workers attributed the prior injuries to child abuse and believed that defendant had inflicted them, he nonetheless asserts that no one ever directly informed him that shaking the victim violently in the future could cause death. Given defendant's awareness of the victim's prior injuries and their medical consequences, as well as the extremely violent shaking needed to have caused her fatal injuries, there is ample evidence that he was aware of and wantonly disregarded the risk of death posed by his conduct. In addition, it was undisputed that after finding the victim unresponsive at 7:30 A.M. and being unable to waken her, defendant made no attempt to seek medical care for more than nine hours. Moreover, he initially explained that the victim had hit her head on a door frame some days earlier after he pushed her during a game. In light of the evidence of the victim's injuries and defendant's attempt to cover up his conduct, the jury could reasonably conclude that the elements of recklessness and depraved indifference were proven (*see People v Maddox*, 31 AD3d 970, 972 [2006], *lv denied* 7 NY3d 868 [2006]; *People v Henderson*, 305 AD2d 940, 941-942

[2003], *lv denied* 100 NY2d 582 [2003]; *People v Britt*, 283 AD2d 778, 779-780 [2001], *lv denied* 96 NY2d 916 [2001]; *People v Parrotte*, 267 AD2d 884, 886 [1999], *lv denied* 95 NY2d 801 [2000]).

Having also considered this evidence in a neutral light and accorded due deference to the jury's assessment of witness credibility (*see People v Bleakley*, 69 NY2d 490, 495 [1987]), we conclude that the jury's finding that the victim's death resulted from acts that were reckless and done with depraved indifference was not against the weight of the evidence. On the separate issue of whether the fatal injuries were inflicted while the victim was in his care, defendant attempted to prove that they could have been sustained much earlier. The expert medical testimony, however, made clear that the victim would have had impaired vision and other disabling symptoms soon after sustaining the retinal and cerebral hemorrhages. Since there was undisputed testimony that the victim had played and acted normally before defendant took care of her, the jury's finding as to when and at whose hand the injuries occurred also was not against the weight of the evidence (*see People v Maddox, supra* at 972-973; *People v Strawbridge, supra* at 593-594).

Lastly, defendant argues that the imposition of the maximum permissible sentence was harsh and excessive because his assault on the victim would have lasted only seconds and he had no prior criminal history. Considering that a brutal crime was perpetrated on a helpless infant and at sentencing defendant showed no remorse, we find no abuse of discretion or extraordinary circumstances warranting modification of the sentence (*see People v Mitchell*, 289 AD2d 776, 780 [2001], *lv denied* 98 NY2d 653 [2002]; *People v Scott*, 288 AD2d 846, 847 [2001], *lv denied* 97 NY2d 761 [2002]; *People v Beaudoin*, 198 AD2d 610, 610 [1993], *lv denied* 82 NY2d 922 [1994]; *People v Bryce*, 174 AD2d 945, 948 [1991], *lv denied* 79 NY2d 854 [1992]).

Cardona, P.J., Mercure, Peters and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.