[849 NYS2d 301]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BOYD B. HESLOP SR., Appellant.

Third Department, December 20, 2007

## APPEARANCES OF COUNSEL

*Mitch S. Kessler*, Cohoes, for appellant.

*Beth G. Cozzolino, District Attorney*, Hudson (*H. Neal Conolly* of counsel), for respondent.

## OPINION OF THE COURT

SPAIN, J.

Defendant was charged with depraved indifference murder (*see* Penal Law § 125.25 [4]), stemming from the death of his four-month-old son. Trial testimony established that defendant was awakened at approximately 5:30 A.M. by his son's cries. Unable to quiet the infant, he twice punched the baby in the head. After the second blow, he realized that the child was injured, later admitting that the skull moved and was "not solid." When his wife awoke to the baby's cry, defendant told her that he dropped the baby on his head but that the baby was now fine and that she should go back to sleep. She observed defendant pat the baby and put him back into his bassinet. When she awoke three hours later, defendant was holding a limp baby. She asked defendant if the baby was breathing and he responded, "[W]hy wouldn't the baby be breathing?" Realizing that the child was unconscious, she called 911. The baby was hospitalized and later died due to multiple skull fractures and brain injuries caused by blunt force trauma. While defendant initially claimed, when interviewed at the hospital, that he had accidently dropped the child on the bathroom floor, he eventually admitted that he had struck the child.

At trial, the physician who performed the postmortem examination testified that the baby's skull had sustained bilateral fractures and severe hemorrhaging. He explained that a blow, such as those inflicted by defendant, would cause an infant to initially cry but then quickly lose consciousness. He further testified that if left unattended for over an hour, as was done here, the baby's brain would swell, causing respiratory failure and a comatose state.

Defendant offered a psychiatric defense based upon the testimony of a psychologist who opined that, due to his impulse control disorder and various other psychiatric conditions, defendant was unable to comprehend the serious nature of his conduct. He further stated that a frontal lobe syndrome suffered by defendant, combined with sleep deprivation and depression, could have rendered him unaware of the risk that his action posed to the baby. In response, the People offered contrary psychiatric testimony supporting defendant's ability to understand or appreciate the gravity of his actions. Further evidence

tending to negate defendant's psychiatric defense consisted of testimony concerning a false statement that he made on an application for social services benefits as well as an earlier assault that he inflicted upon his wife which resulted in criminal charges and an order that he attend anger management classes. County Court refused to permit testimony from defendant's mother and sister concerning a head injury that he sustained during childhood which allegedly caused him to act irrationally. Convicted as charged by a jury and sentenced to a prison term of 25 years to life, defendant appeals.

■ We affirm. Based upon ample evidence to support the jury's verdict, we reject defendant's contention that the depraved indifference murder verdict was not supported by legally sufficient evidence (*see People v Maddox*, 31 AD3d 970, 971-972 [2006], *lv denied* 7 NY3d 868 [2006]; *see also People v Suarez*, 6 NY3d 202, 212-213 [2005]; *People v Mills*, 1 NY3d 269, 275-276 [2003]). Compelling evidence demonstrated that defendant knew—after he hit the baby—that he had been severely injured, but nevertheless induced his wife to go back to sleep and left the child to die. Such circumstances clearly present a situation upon which a jury could find that defendant acted with the requisite depravity. "Given the level of force required to inflict these fatal injuries and defendant's attempt to cover up his conduct, the jury reasonably could have concluded that defendant was aware of an obvious risk of death" to the baby and that his actions "presented a grave risk of death and evinced a depraved indifference to the infant's plight" (*People v Maddox*, 31 AD3d at 972 [citations omitted]; *see People v Strawbridge*, 299 AD2d 584, 593 [2002], *lvs denied* 99 NY2d 632 [2003], 100 NY2d 599 [2003]). Nor was defendant's conviction against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]). After weighing the evidence presented, including the conflicting expert opinions, we find ample support for the jury's decision to discredit that evidence which supported defendant's psychiatric defense (*see People v Dickerson*, 42 AD3d 228, 233-235 [2007], *lv denied* 9 NY3d 960 [2007]; *People v Smith*, 41 AD3d 964, 966 [2007]; *People v Maddox*, 31 AD3d at 972-973; *People v Strawbridge*, 299 AD2d at 593-594).

■ We turn next to defendant's assertion that County Court erred in refusing defendant's request to charge manslaughter in the second degree (*see* Penal Law § 125.15) as a lesser included offense of depraved indifference murder as defined by Penal Law § 125.25 (4). A defendant is entitled to a lesser included of-

fense charge where he or she can "establish that it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct" and that there is "a reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater" (*People v Van Norstrand*, 85 NY2d 131, 135 [1995]; *see* CPL 1.20 [37]; 300.50 [1]; *People v Caruso*, 6 AD3d 980, 983 [2004], *lv denied* 3 NY3d 704 [2004]).

Pursuant to Penal Law § 125.25 (4), a person is guilty of murder in the second degree when that person, 18 years old or more, "[u]nder circumstances evincing a depraved indifference to human life, . . . recklessly engages in conduct which creates a grave risk of serious physical injury or death to another person less than eleven years old and thereby causes the death of such person." Under subdivision (2) of this statute, a person commits murder in the second degree when, "[u]nder circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person" (Penal Law § 125.25 [2]). It is undisputed that manslaughter in the second degree is a lesser included offense of depraved indifference murder under Penal Law § 125.25 (2) (*see e.g. People v Atkinson*, 7 NY3d 765, 766-767 [2006]; *People v Smothers*, 41 AD3d 1271, 1272 [2007], *lv denied* 9 NY3d 964 [2007]; *People v DeCapua*, 37 AD3d 1189, 1190 [2007], *lv denied* 8 NY3d 983 [2007]; *People v McPherson*, 35 AD3d 765, 766 [2006]; *People v McMillon*, 31 AD3d 136, 139-140 [2006], *lv denied* 7 NY3d 815 [2006]). Although other decisions reflect that manslaughter in the second degree has been charged as a lesser included offense of depraved indifference murder under Penal Law § 125.25 (4) (*see People v Dickerson*, 42 AD3d at 233-234; *People v Baker*, 4 AD3d 606, 612 [2004], *lv denied* 2 NY3d 795 [2004]; *People v Moore*, 216 AD2d 902, 902-903 [1995], *lv denied* 87 NY2d 905 [1995]), no challenge to such charge was raised on those appeals. Notably, the Fourth Department has held that manslaughter in the second degree is not a lesser included offense of Penal Law § 125.25 (4) (*see People v Robinson*, 278 AD2d 798 [2000], *lv denied* 96 NY2d 762 [2001]), but we have not been called upon to consider the issue until now.

Thus, we must determine whether it is impossible to commit depraved indifference murder as defined by Penal Law § 125.25 (4), without—at the same time—committing manslaughter in the second degree (*see People v Van Norstrand*, 85 NY2d at 135;

*People v Morales*, 36 AD3d 957, 958 [2007], *lv denied* 8 NY3d 988 [2007]; *People v Britt*, 283 AD2d 778, 780 [2001], *lv denied* 96 NY2d 916 [2001]). The distinction between Penal Law § 125.25 (2) and Penal Law § 125.25 (4) is that subdivision (4) sets forth "a reduced intent requirement" to specifically address the crime of child abuse (Assembly Sponsor's Mem in Support, Bill Jacket, L 1990, ch 477, at 10). Representing "[a] lesser mens rea requirement coupled with proof of reckless conduct," subdivision (4) holds "child abusers responsible for the consequential results of the acts which they should have known could occur by virtue of the child's naturally vulnerable condition" (Assembly Sponsor's Mem in Support, Bill Jacket, L 1990, ch 477, at 10). Thus, in contrast to the required finding under subdivision (2), that a defendant's reckless conduct "creates a grave risk of death" and causes the death of such person, a conviction may also be sustained under subdivision (4) where the reckless conduct "creates a grave risk of serious physical injury" to a young child and causes the child's death.

"Serious physical injury" is "physical injury which creates a substantial risk of death, *or* which causes death *or* serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10] [emphasis added]). Thus, the risk guarded against under Penal Law § 125.25 (4) *is not limited to risk of death*. Manslaughter in the second degree, on the other hand, requires a person to "recklessly cause[] the death of another person" (Penal Law § 125.15 [1]) " 'by creating and consciously disregarding a substantial and unjustifiable *risk of death*' " (*People v Lutes*, 285 AD2d 739, 740 [2001], *lv denied* 97 NY2d 642 [2001] [emphasis added], quoting *People v Hart*, 266 AD2d 698, 700 [1999], *lv denied* 94 NY2d 880 [2000]; *see* Penal Law § 15.05 [3]).

The dispositive inquiry, therefore, is whether one can engage in conduct that creates and disregards a grave risk of serious physical injury, causing death (Penal Law § 125.25 [4]), without necessarily engaging in conduct that creates and disregards a substantial risk of death, causing death (Penal Law § 125.15 [1]). Viewing the inquiry in the abstract (*see People v Glover*, 57 NY2d 61, 64 [1982]; *People v Alvarez*, 38 AD3d 930, 934 [2007], *lv denied* 8 NY3d 981 [2007]), we conclude that the answer is yes.

For example, offenders who inflict shallow wounds or burns on a child, disregarding the grave risk of disfigurement but not

necessarily death, or those who suffer from Munchausen syndrome by proxy,* might not be liable for creating a substantial and unjustified risk *of death* so as to expose him or her to liability for second degree manslaughter. However, under such circumstances, should the child die from infection, shock or some other complication flowing from the abuse, a factfinder might find that the abuser created a risk of "serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]), which caused death, such as to give rise to liability for murder under Penal Law § 125.25 (4) (*see e.g. People v Dickerson*, 42 AD3d at 230-234 [depraved indifference murder sustained where the defendant slowly starved his daughter to death during her five-year lifetime]).

Concededly, in many cases, a violation of Penal Law § 125.25 (4) would give rise to liability under Penal Law § 125.15 and it may be the rare case where one engages in conduct creating a grave risk of serious physical injury which causes death but does not engage in conduct creating a substantial risk of death. Nevertheless, to hold otherwise would blur the distinction created by the Legislature in promulgating Penal Law § 125.25 (4), creating a lower threshold of intent for crimes against children under 11. Surely, in promulgating Penal Law § 125.25 (4), the Legislature contemplated instances in which actions by adults, which do not necessarily rise to the level of recklessly disregarding a substantial risk of death, could nevertheless result in culpability for murder because of the special vulnerabilities of the class of victims. Accordingly, we hold that County Court appropriately refused to charge manslaughter in the second degree.

Defendant raises a number of trial errors, the arguments to which we find unpersuasive. First, defendant contends that County Court erred when it precluded defendant's mother and sister from testifying, in support of defendant's mental impairment defense, regarding a childhood head injury suffered by defendant. The decision to admit such testimony falls within the broad discretion of the trial court and here we find no abuse of that discretion (*see People v Almonor*, 93 NY2d 571, 583 [1999]; *People v Aska*, 91 NY2d 979, 981 [1998]; *People v Martin*, 35 AD3d 1183, 1185 [2006], *lv denied* 8 NY3d 924 [2007]). In our

---

* Those afflicted by this syndrome seek attention for themselves by inducing symptoms in a child through various means such as poisoning, suffocating, starving and causing infection.

view, the proposed testimony would have caused " 'undue diversion to collateral matters having little or no bearing on the guilt or innocence of the defendant' " (*People v Aska*, 91 NY2d at 981, quoting *People v Miller*, 39 NY2d 543, 551 [1976]). Further, the expert testimony proffered by defendant at trial established that defendant had experienced a childhood head injury and opined that the injury had impacted his mental development. The People's expert did not dispute that a childhood injury had occurred but, nevertheless, opined that defendant did not suffer from a mental impairment which would prevent him from appreciating the consequences of his actions. Under these circumstances, the proposed testimony of lay witnesses on the subject would have been redundant, serving merely to "buttress the testimony of the expert witness[ ]" (*People v Boomer*, 220 AD2d 833, 836 [1995]; *see People v Seiler*, 139 AD2d 832, 833 [1988], *lv denied* 72 NY2d 924 [1988]).

Next, we reject defendant's challenge to the admission of evidence that he had made a false statement on an application for social services benefits a few months prior to killing his son. By claiming that he was unable to discern the nature and consequences of his actions by reason of mental defect, defendant opened the door to the presentation of evidence of certain prior uncharged criminal or immoral conduct that tended to disprove the mental deficiency claim, where the trial court finds that "the evidence bears some articulable relation to the issue, but also that its probative value in fact warrants its admission despite the potential for prejudice" (*People v Santarelli*, 49 NY2d 241, 250 [1980]; *see People v Clark*, 94 AD2d 846, 848 [1983]). We find that County Court appropriately found that the probative value of the evidence—i.e., that defendant, who seeks to be held unaccountable for his actions due to mental impairment, had the cognitive ability to undertake an act of deception to achieve a desirable result—outweighed any potential prejudice to defendant.

Defendant's remaining contentions, including his challenges related to County Court's instructions to the jury, to the extent that they are preserved for our review, fail to persuade us that the court erred, that defendant's rights were violated or that he did not receive a fair trial. Finally, we conclude that County Court exercised sound discretion in sentencing defendant, within proper sentencing limits, to 25 years to life for this brutal crime against his own infant son (*see People v Dickerson*, 42 AD3d at 237-238; *People v Smith*, 41 AD3d at 967; *see also* Penal Law § 70.00 [2] [a]; [3] [a] [i]).

PETERS, J. (dissenting). I respectfully disagree with the majority's conclusion that manslaughter in the second degree is not a lesser included offense of depraved indifference murder under Penal Law § 125.25 (4). In my opinion, the risk-creating conduct required for manslaughter in the second degree is *always* satisfied by the commission of depraved indifference murder.

The mens rea of recklessness under manslaughter in the second degree* is the disregard of a "substantial and unjustifiable risk" of death (Penal Law § 15.05 [3]). The mens rea of depraved indifference murder under Penal Law § 125.25 (4) is reckless conduct which "creates a grave risk of serious physical injury or death" under circumstances which evince depraved indifference to human life. Serious physical injury is "physical injury which creates a *substantial risk of death*" (Penal Law § 10.00 [10] [emphasis added]). Therefore, I conclude that one who disregards a grave risk of serious physical injury which causes death, concomitantly disregards a "substantial and unjustifiable risk" of death.

The Court of Appeals has implicitly agreed. In *People v Suarez* (6 NY3d 202, 213 [2005]), it declared that "[r]eckless homicide cannot be elevated into depraved indifference murder merely because the actions of the defendant created a risk of death, however grave or substantial that risk may have been." Rather, "[t]he critical statutory language that separates second-degree manslaughter from depraved indifference murder is the defendant's underlying *depraved indifference*" (*id.* at 213-214; *see People v Feingold*, 7 NY3d 288, 292-294 [2006]; *People v Hafeez*, 100 NY2d 253, 260 [2003, Rosenblatt, J., concurring]).

Thus, because the risk-creating conduct required for manslaughter in the second degree is always satisfied by the commission of depraved indifference murder under Penal Law § 125.25 (4), manslaughter in the second degree is a lesser included offense. Assessing whether a reasonable view of the evidence would support a finding that this defendant committed the lesser offense but not the greater, "[o]ur inquiry is not directed at whether persuasive evidence of guilt of the greater crime exists, as it does here, but whether, under any reasonable view of the evidence, it is possible for the trier of facts to acquit defendant on the higher count and still find him guilty of the lesser one" (*People v Van Norstrand*, 85 NY2d 131, 136 [1995]).

---

* A person is guilty of manslaughter in the second degree when he or she "recklessly causes the death of another person" (Penal Law § 125.15 [1]).

Viewing the evidence in the light most favorable to defendant (*see People v Johnson*, 45 NY2d 546, 549 [1978]; *People v Hendrie*, 24 AD3d 871, 874 [2005], *lv denied* 6 NY3d 776 [2006]), I find that it does not exclude every possible hypothesis other than that of guilt of the higher crime. Thus, the lesser included offense should have been charged (*see People v Johnson*, 45 NY2d at 549). As County Court denied defendant's request to charge, the judgment must be reversed.

CARDONA, P.J., CARPINELLO and ROSE, JJ., concur with SPAIN, J.; PETERS, J., dissents in a separate opinion.

Ordered that the judgment is affirmed.

[Next page is 201.]