People v Hansson (2018 NY Slip Op 04395)





People v Hansson


2018 NY Slip Op 04395


Decided on June 14, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 14, 2018

108159

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
SAUNDRA HANSSON, Appellant.

Calendar Date: April 23, 2018

Before: McCarthy, J.P., Egan Jr., Aarons, Rumsey and

 Pritzker, JJ.

Cliff Gordon, Monticello, for appellant.
James R. Farrell, District Attorney, Monticello, for respondent.


Egan Jr., J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Sullivan County (McGuire, J.), rendered January 13, 2016, upon a verdict convicting defendant of the crimes of assault in the first degree, assault in the second degree and criminal obstruction of breathing or blood circulation.
On June 18, 2014, police were dispatched to the Short Line bus terminal in the Village of Monticello, Sullivan County in response to a 911 call from a civilian reporting that two people had just gotten off of a bus with two small children who looked like they had been beaten. Upon arrival, the police encountered defendant, her three-year-old son (hereinafter the victim) and her 18-month-old son standing at a picnic table across the street
from the bus terminal. One of the officers observed that the victim had two black eyes and various bruises. Upon inquiry, defendant informed the police that the victim was prone to falls and had fallen down a flight of stairs. Michael Croci, defendant's boyfriend, arrived shortly thereafter and, following a few additional questions, defendant and Croci agreed to accompany the police to their station. Shortly thereafter, the victim was transported by ambulance to Catskill Regional Medical Center (hereinafter CRMC) and then airlifted by helicopter to Westchester Medical Center. Upon admission to the intensive care unit, the victim was intubated and found to suffer from a major abdominal injury, a fractured neck, three pelvic fractures, a fractured left humerus, a fractured clavicle, numerous fractured ribs, multiple fractures in both his hands, bruises and hematomas across his abdomen, head, back, face and ears, a bruised pancreas and a perforated colon, and he was bleeding in his obturator muscle, belly and intestines. Meanwhile, [*2]defendant was questioned by police and gave a written statement wherein she admitted to punching, hitting, kicking, pushing and slapping the victim, as well as holding her hand over his mouth so he could not breathe.
Defendant was thereafter charged by indictment with assault in the first degree, assault in the second degree and criminal obstruction of breathing or blood circulation. Defendant's subsequent motion to preclude her oral and written statements as involuntary was denied, as was her letter application seeking to call an expert psychiatric witness with respect to the theory of coercive control. Following a jury trial, defendant was convicted as charged, and she was thereafter sentenced to concurrent prison terms of 22 years followed by five years of postrelease supervision for the assault in the first degree conviction, seven years followed by five years of postrelease supervision for the assault in the second degree conviction and one year for the obstruction of breathing or blood circulation conviction. Defendant now appeals.
Defendant's initial contention that County Court erred in not suppressing her oral and written statements to law enforcement because she was taken into custody without probable cause was not preserved for our review as defendant failed to challenge the legality of her detention and/or arrest in her omnibus motion (see CPL 470.05 [2]; People v Collier, 146 AD3d 1146, 1147 [2017], lv denied 30 NY3d 948 [2017]; People v Purcelle, 282 AD2d 824, 824-825 [2001]). Defendant's contention that County Court improperly infringed on her ability to present a defense by limiting her cross-examination of Croci with regard to two unrelated Family Court petitions was also not preserved as defendant did not advance to County Court the argument that she now makes — that said testimony was relevant as to Croci's coercive control of defendant and would serve to explain her purportedly false confession (see CPL 470.05 [2]; People v Fournier, 137 AD3d 1318, 1321 [2016], lv denied 28 NY3d 929 [2016]; People v Clickner, 95 AD2d 925, 926 [1983]). In any event, the argument is without merit as County Court properly limited cross-examination of Croci with respect to these collateral matters (see People v Alvino, 71 NY2d 233, 247 [1987]; People v Hahn, 159 AD3d 1062, 1066 [2018]).
We find similarly unavailing defendant's contention that County Court improperly limited her direct examination of Amber Dinoff, a friend of defendant who provided a temporary home for defendant's two children in the month prior to her moving into an apartment with Croci. Although County Court limited Dinoff from testifying to whether she observed Croci hit defendant during a visit to her residence, such testimony was not relevant to whether defendant was guilty of beating her son and, therefore, it did not serve to impair defendant's ability to present a defense (see People v DeFreitas, 116 AD3d 1078, 1082 [2014], lv denied 24 NY3d 960 [2014]). To the extent that defendant argues that such testimony was relevant to establish Croci's coercive control over defendant, we note that Dinoff testified to numerous other instances of Croci's controlling behavior, and the jury had previously heard defendant testify regarding Croci having struck her while at Dinoff's residence. Moreover, even assuming, without deciding, that County Court erred in limiting Dinoff's testimony in this regard, given the strength of the evidence against defendant, under the circumstances, we find that any such error was harmless (see People v Crimmins, 36 NY2d 230, 241-242 [1975]; People v Hughes, 114 AD3d 1021, 1023 [2014], lv denied 23 NY3d 1038 [2014]).
Next, we reject defendant's contention that she was deprived of her right to a fair trial when County Court denied her application to retain an expert witness in support of the theory that she was under the coercive control of Croci and that, by reason of that control, she falsely confessed to beating her son. Indeed, the Court of Appeals has recognized that psychiatric and/or psychological experts "may offer valuable testimony to educate a jury about those factors of personality and situation that the relevant scientific community considers to be associated with [*3]false confessions. While the expert may not testify as to whether a particular defendant's confession was or was not reliable, the expert's proffer must be relevant to the defendant and interrogation before the court" (People v Bedessie, 19 NY3d 147, 161 [2012]; see People v Jeremiah, 147 AD3d 1199, 1204-1205 [2017], lvs denied 29 NY3d 1031, 1033 [2017]). In determining the relevancy of the proposed expert testimony, the trial court must examine "'the nature of the interrogation, the applicability of the science of false confessions to the defendant and the extent to which the People's case relie[s] on the confession'" (People v Jeremiah, 147 AD3d at 1205, quoting People v Evans, 141 AD3d 120, 126 [2016], appeal dismissed 28 NY3d 1101 [2016]). Notably, the admissibility of expert testimony is addressed to the sound discretion of the trial court, and its determination will not be disturbed absent an abuse of discretion or error of law (see People v Bedessie, 19 NY3d at 156; People v Heyliger, 126 AD3d 1117, 1120 [2015], lv denied 25 NY3d 1165 [2015]; People v Salce, 124 AD3d 923, 926 [2015], lv denied 25 NY3d 1207 [2015]).
In support of her application, defendant argued that it was essential that she be able to retain and present the expert testimony of Evan Stark, a forensic social worker, to explain why she would falsely confess to beating her own child and/or why she would protect the person who actually inflicted injuries on her child. Defendant's proffer in this regard suffered from two shortcomings. First, defendant failed to present any evidence demonstrating that the theory of coercive control itself has gained general acceptance in the scientific community (see People v Bedessie, 19 NY3d at 161; People v LeGrand, 8 NY3d 449, 457 [2007]). Second, even assuming that defendant could produce evidence that the theory of coercive control is generally accepted in the scientific community, she failed to proffer any evidence that, in such an instance, being subjected to coercive control would, in turn, cause an individual to falsely confess to a crime he or she did not commit. In fact, following an extensive colloquy with County Court, defense counsel conceded that she was not aware of any published scientific studies on the issue of whether women who have been in abusive relationships are prone to falsely confess to crimes against third parties [FN1]. Accordingly, in our view, County Court appropriately found that the admission of expert testimony in this regard would be far too speculative (see People v Ignatyev, 147 AD3d 489, 491 [2017], lv denied 29 NY3d 1033 [2017]), and we discern no abuse of discretion in its denial of defendant's application without a Frye hearing.
Further, we find no error in County Court's admission of two statements that the victim [*4]provided to medical professionals implicating defendant as his abuser upon his admission to CRMC and Westchester Medical Center. Upon his admission to the emergency department at CRMC, a nurse inquired of the victim as to what had happened to his neck, to which he replied "mommy [choked] me, mommy tied me and pulled me," which statements she included in a late entry note in the victim's medical records. Thereafter, upon being airlifted to Westchester Medical Center, the victim's attending physician inquired of the victim as to who had hurt him, to which the victim responded "mommy hurt me." Both statements fall squarely within the business records exception to the hearsay rule as the inquiry was made for the express purpose of "determin[ing] the mechanism of injury" and was germane to the victim's diagnosis, prognosis and treatment of same (People v Duhs, 16 NY3d 405, 409 [2011]; see People v Ortega, 15 NY3d 610, 617 [2010]; People v Caccese, 211 AD2d 976, 977 [1995], lv denied 86 NY2d 780 [1995]; see also CPLR 4518; CPL 60.10). Moreover, the victim's statement at Westchester Medical Center was relevant to treatment inasmuch as the hospital was aware that this was an incident involving child abuse and, therefore, it was necessary for hospital staff to create a discharge plan for the victim that would, among other things, ensure his safety and provide for any psychological and counseling services that he might require (see People v Ortega, 15 NY3d at 617; People v Pham, 118 AD3d 1159, 1162 [2014], lv denied 24 NY3d 1087 [2014]; People v Wright, 81 AD3d 1161, 1164 [2011], lv denied 17 NY3d 803 [2011]).
Nor did County Court err in admitting medical records with regard to various injuries that the victim sustained predating the time period set forth in the indictment. Admission of such evidence was material and relevant on the issue of whether defendant's conduct evinced a depraved indifference to human life — an element of assault in the first degree (see Penal Law § 120.10 [3]) — and was certainly probative as to her state of mind at the time that the subject assault was committed (see People v Smith, 41 AD3d 964, 965 [2007], lv denied 9 NY3d 881 [2007]; People v Holloway, 185 AD2d 646, 647 [1992], lv denied 80 NY2d 1027 [1992]). Evidence of the child's prior injuries was likewise relevant and admissible to refute any assertion that the injuries were caused by an accident or mistake and to identify defendant as the perpetrator, particularly where, as here, defendant is charged with abusing her son and the alleged criminal conduct occurred in a private setting such that the facts are not easily discernible (see People v Henson, 33 NY2d 63, 72 [1973]; People v Caccese, 211 AD2d at 978; People v Wilcox, 194 AD2d 820, 821 [1993]; People v Engler, 150 AD2d 827, 829 [1989], lv denied 75 NY2d 770 [1989]). Accordingly, we find that County Court appropriately determined that the probative value of such evidence far outweighed its potential for prejudice to defendant (see People v Smith, 41 AD3d at 965; People v Holloway, 185 AD2d at 647).
Lastly, we find defendant's contention that the sentence imposed was harsh and excessive to be without merit. The attending pediatric physician at the Westchester Medical Center emergency room — a level I trauma center — testified that the injuries that the three-year-old victim sustained were extreme, that he presented with "more bruises than any child abuse case [she had] ever seen" and that she had never witnessed this type of injury in a child even from a car accident. The director of the child abuse pediatrics program at Westchester Medical Center testified that she has attended to over 7,000 children throughout her career and that she could only recall observing such an extreme pelvic injury as that sustained by the victim one other time, which, in that instance, was caused by a high speed motor vehicle accident, and that the excessive traumatic force required to inflict such an injury from a kick, stomp or punch must have been horrific. She further opined that, absent medical treatment, the victim most certainly would have died from the injuries that he sustained. Given the wanton brutality of the beating that defendant brought to bear on her own three-year-old son, which left the child with life-threatening injuries including a broken neck, three pelvic fractures, broken ribs, a perforated bowel and a severe abdominal injury, the fact that she did not voluntarily seek any medical [*5]treatment for her son's injuries, her lack of remorse and the fact that the sentence imposed was not the maximum (see Penal Law § 70.00), we find no extraordinary circumstances or abuse of discretion that would warrant disturbing the sentence imposed (see People v Long, 291 AD2d 720, 723 [2002], lv denied 98 NY2d 677 [2002]; People v Britt, 283 AD2d 778, 781 [2001], lv denied 96 NY2d 916 [2001]).
McCarthy, J.P., Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant's proffer failed to establish that coercive control has been generally accepted in the scientific community for purposes of explaining why a defendant might provide a false confession. Certainly, expert testimony regarding psychological syndromes such as battered person syndrome or rape trauma syndrome have been generally accepted within the scientific community and, in turn, expert testimony has been admitted into evidence to explain a victim's behavior or conduct in, among other things, acting in self-defense or delaying the report of abuse (see generally People v Carroll, 95 NY2d 375, 387 [2000]; People v Roblee, 83 AD3d 1126, 1128 [2011], lv denied 17 NY3d 809 [2011]; People v Smith, 9 AD3d 745, 747 [2004], lv denied 3 NY3d 742 [2004]; People v Carroll, 300 AD2d 911, 914 [2002], lv denied 99 NY2d 626 [2003]). However, never have these theories been extended to support the proposition that a victim of domestic violence would falsely confess to a crime.