People v Cade (2022 NY Slip Op 01345)





People v Cade


2022 NY Slip Op 01345


Decided on March 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 3, 2022

110195
[*1]The People of the State of New York, Respondent,
v
Jeremy J. Cade, Appellant.

Calendar Date:January 12, 2022

Before:Lynch, J.P., Clark, Aarons and Reynolds Fitzgerald, JJ.

Thomas R. Villecco, Albany, for appellant, and appellant pro se.
Weeden A. Wetmore, District Attorney, Elmira (Nathan M. Bloom of counsel), for respondent.



Clark, J.
Appeal from a judgment of the County Court of Chemung County (Baker, J.), rendered January 11, 2018, upon a verdict convicting defendant of the crimes of burglary in the third degree (three counts), grand larceny in the fourth degree (two counts), criminal mischief in the third degree, petit larceny and criminal mischief in the second degree (two counts).
In January 2017, three restaurants in Chemung County were burglarized. The third burglary ended in a high-speed police chase, and that chase led to the recovery of a vehicle containing, among other incriminating evidence, proceeds from the two most recent burglaries. After that vehicle was tied to defendant, he was charged by a nine-count indictment for his involvement in the foregoing crimes. For the incident at Tag's Restaurant in the Town of Big Flats, defendant was charged with burglary in the third degree (count 1), grand larceny in the fourth degree (count 2) and criminal mischief in the third degree (count 3). For the incident at the Arby's Restaurant in the City of Elmira, he was charged with burglary in the third degree (count 4) and petit larceny (count 5). For the incident at a Dunkin' Donuts in the Village of Elmira Heights, he was charged with burglary in the third degree (count 6), grand larceny in the fourth degree (count 7) and two counts of criminal mischief in the second degree (counts 8 and 9). Following a jury trial, defendant was convicted as charged, and he was then sentenced, as a second felony offender, to an aggregate prison term of 10½ to 21 years. Defendant appeals.
Defendant contends that the jury's verdict was against the weight of the evidence, maintaining that the People failed to establish his identity as a perpetrator of the subject crimes beyond a reasonable doubt. In assessing whether a verdict is supported by the weight of the evidence, we must first determine whether, "based on all the credible evidence[,] a different finding would not have been unreasonable," and, if it would have been reasonable for the jury to reach a different conclusion, then we must "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" to determine whether "the [jury] has failed to give the evidence the weight it should be accorded" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; see People v Romero, 7 NY3d 633, 643-644 [2006]).
"A person is guilty of burglary in the third degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20). Where a person steals property, that person is guilty of petit larceny (see Penal Law § 155.25), and, where a person steals property and the value of that property exceeds $1,000, he or she is guilty of grand larceny in the fourth degree (see Penal Law § 155.30 [1]). "A person is guilty of criminal mischief in the third degree [*2]when, with intent to damage property of another person, and having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . damages property of another person in an amount exceeding [$250]" (Penal Law § 145.05 [2]). When the value of the property damage exceeds $1,500, a person is guilty of criminal mischief in the second degree (see Penal Law § 145.10).
Defendant's brother, age 17 at the time of the subject crimes, testified for the People as part of a plea agreement and admitted that he and defendant, 10 years his senior, were responsible for the three burglaries and attendant property damage, acknowledging that he had previously made certain statements to the contrary. Each of the burglaries was also captured by surveillance cameras. With respect to the incident at Tag's on January 13, 2017, both defendant's brother and a state worker who had met with defendant on a weekly basis since August 2016 identified defendant as one of the perpetrators in the restaurant's surveillance video. The getaway vehicle was also captured on video, and it was later determined that the vehicle was the same color, make and model as the vehicle registered to defendant's girlfriend at the time. A social media account associated with a known alias of defendant was also discovered, and, on January 22, 2017, a photograph was posted to that account that depicted a large sum of fanned out cash. Another picture posted to that same account depicts defendant wearing a sweatshirt that matches the one worn by the individual identified as him in the surveillance video. According to a Tag's employee, over $1,500 was taken during the burglary and approximately $450 in property damage was caused.
The next two burglaries occurred during the early morning hours of January 25, 2017. With respect to the incident at Arby's, in addition to the testimony of defendant's brother, surveillance cameras at the restaurant captured two perpetrators, one of whom was wearing a unique, distressed pair of designer jeans, and the aforementioned social media account included a recent photograph of defendant wearing a matching pair of jeans. According to an Arby's employee, exactly $1,000 was missing from the store. With respect to the Dunkin' Donuts incident, an employee arrived at work at 2:30 a.m. for her shift while the burglary was taking place and called 911, relaying that the two perpetrators fled the scene in a Nissan Maxima. That employee followed the Maxima in her vehicle until law enforcement caught up to them. A high-speed chase ensued, and, ultimately, the driver of the Maxima drove the vehicle off the road, through several fences and over school athletic fields before coming to a stop, at which point both of the vehicle's occupants fled on foot. Approximately $2,100 was stolen from Dunkin' Donuts and over $1,500 in damage was caused to the property. Approximately $5,000 in damage was caused to the property of a local high school [*3]as a result of the police chase.
A search of the Maxima resulted in the recovery of a pry bar, a sledgehammer, cash and rolled coins, cash register bins, bank bags belonging to Arby's and a box used to hold currency bearing the Dunkin' Donuts logo. The vehicle was determined to be registered to a woman who testified that she had lent her vehicle to defendant earlier that evening upon the request of a mutual friend and in exchange for $100. She also testified that none of the foregoing items were in her vehicle before it was borrowed. Although the vehicle's owner identified defendant at trial as the individual who borrowed her vehicle, she had been unable to identify him in a pretrial photo array, explaining that she had just recently met defendant. She further stated that on the night of the burglaries it was dark, and defendant was wearing a hooded sweatshirt that prevented her from getting a clear view of his face. Text messages between defendant and the aforementioned mutual friend confirm much of the foregoing, and the mutual friend testified that defendant called her the morning after the Arby's and Dunkin' Donuts burglaries to explain that he had taken the borrowed vehicle on a high-speed police chase and was on his way out of the state.
The jury could have discredited the testimony of defendant's brother given that he had made prior contradictory statements about defendant's involvement in the subject crimes and was testifying for the People pursuant to the terms of a plea agreement, and another verdict therefore would not have been unreasonable here. However, viewing the evidence in a neutral light and according deference to the jury's credibility assessments, we find defendant's identity as a perpetrator of the subject crimes to have been proven beyond a reasonable doubt and each of his convictions to be amply supported by the weight of the evidence (see Penal Law §§ 140.20, 145.05 [2]; 145.10, 155.25, 155.30 [1]; People v Fomby, 101 AD3d 1355, 1355-1356 [2012]; People v Brown, 62 AD3d 1089, 1090-1091 [2009], lvs denied 13 NY3d 742 [2009]; People v Barringer, 54 AD3d 442, 443 [2008], lvs denied 11 NY3d 830, 836 [2008]).
Defendant also contends that County Court erred in denying his pretrial motion to dismiss the indictment upon the ground that he was not given a reasonable amount of time prior to the grand jury proceeding to consult with counsel as to whether he should testify. However, defendant, who was the subject of an active arrest warrant, had not been arraigned "in a local criminal court upon a currently undisposed of felony complaint" charging him with the offenses that were to be the subject of the pending grand jury proceeding, and the People therefore had no duty to inform him of his right to testify thereat (CPL 190.50 [5] [a]; see People v Martin, 132 AD3d 909, 910 [2015], lv denied 26 NY3d 1110 [2016]; People v Small, 112 AD3d 857, 858 [2013], mod 26 NY3d 253 [2015]; People v Maddox, 31 AD3d 970, 973 [2006], lv [*4]denied 7 NY3d 868 [2006]). Defendant's claim that the People violated their Rosario obligation by not turning over evidence of the aforementioned photo array until the morning before the start of trial is unpreserved (see People v Rogelio, 79 NY2d 843, 844 [1992]; People v Bottomley, 146 AD3d 1026, 1027 [2017], lv denied 29 NY3d 947 [2017]; People v Torres, 96 AD3d 881, 882 [2012], lv denied 20 NY3d 1065 [2013]) and meritless (see CPL former 240.45).
In addition, defendant has failed to meet his burden on his pro se ineffective assistance of counsel claim. The allegations underlying his claim appear to be almost exclusively premised upon matters outside of the record, such as defense counsel's alleged failure to investigate, and the claim is therefore more properly the subject of a CPL article 440 motion (see People v McCoy, 198 AD3d 1021, 1023 [2021], lv denied ___ NY3d ___ [Jan. 19, 2022]; People v Horton, 173 AD3d 1338, 1341 [2019], lv denied 34 NY3d 933 [2019]; People v Rawlinson, 170 AD3d 1425, 1429 [2019], lv denied 33 NY3d 1107 [2019]). The record that is before us reflects that defense counsel engaged in appropriate pretrial motion practice, advanced a trial strategy of attacking the credibility of the People's witnesses through effective cross-examination and successfully advocated for a predicate sentencing status rather than the persistent felony offender status that had been sought by the People.
We lastly do not find defendant's aggregate sentence of 10½ to 21 years to be harsh or excessive. Defendant received a permissible sentence on each of his felony convictions, albeit the maximum (see Penal Law § 70.06 [3] [d], [e]; [4] [b]), and the consecutive manner in which his sentences were imposed was lawful (see Penal Law § 70.25). In addition to defendant's extensive criminal history and being on parole at the time, County Court found it significant that defendant had swept his brother into the subject crimes — a younger brother without any criminal history who had recently located defendant via social media after the two grew up in separate foster homes — and then later accused the brother of lying when the brother testified against him at trial. As stated above, defendant could have been sentenced as a persistent felony offender, but County Court exercised its discretion to not sentence him as such in light of his difficult upbringing and the fact that he had not burgled homes (see generally Penal Law § 70.10). It therefore cannot be said that the court abused its discretion in fashioning defendant's sentence, and we decline to exercise our interest of justice jurisdiction to reduce it. Defendant's claim that he was punished for exercising his right to trial is unpreserved, in light of County Court's decision not to impose persistent status, and, we also find it is unpersuasive (see People v Hurley, 75 NY2d 887, 888 [1990]; People v Hahn, 159 AD3d 1062, 1067 [2018], lv denied 31 NY3d 1117 [2018]; People v Mileto, 290 AD2d [*5]877, 880 [2002], lv denied 97 NY2d 758 [2002]).
Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.